KING, P.J.,
for the court.
¶ 1. Edward A. Stuart claimed to have suffered injuries to his back while working at Janssen Pharmaceutica, Inc. The administrative law judge awarded Stuart permanent total disability benefits for 450 weeks. Janssen appealed to the Workers’ Compensation Commission which reversed and dismissed Stuart’s claim. Stuart appealed to the Circuit Court of Rankin County which reversed the Commission and reinstated the order of the administrative law judge. Janssen appeals, arguing that the decision of the circuit court was not supported by substantial evidence. Finding that the circuit court erred, we reverse and affirm the action of the Commission.
FACTS
¶ 2. Stuart began working as a pharmaceutical sales representative for Janssen in October of 1997. On November 7, 1997, after completing two weeks of training in New Jersey, Stuart and several other *433 Janssen employees were on their way to the airport in a van. Stuart was seated behind the driver. A drunk driver struck the van on the driver’s side. The van driver pulled over and the police were called. Only one passenger, a woman, claimed to be injured. After the accident, Stuart continued to the airport for the return flight to Jackson. Stuart testified that he began experiencing mild tenderness in his middle back.
¶ 3. Stuart returned to work and continued to work over the next few months. However, he indicated that the tenderness in his back continued to the point that he required non-prescription medication for the pain. As the pain increased, several other medical problems began, including difficulty urinating and impotency. Stuart, a licensed practical nurse, and his wife a registered nurse, believed the pain was due to an ulcer and attempted to treat the problem at home.
¶4. On January 14, 1998, the pain became unbearable and caused him to go to the emergency room. According to hospital records, Stuart stated that he had been experiencing back pain for a week. Stuart was treated for an ulcer, sedated and released. After the medication wore off, the pain increased and Stuart returned to the emergency room. At that time, Dr. Mills, a gastroendorologist, determined that Stuart’s pain was not due to an ulcer and referred him to Dr. Ruth Fredericks.
¶ 5. Dr. Fredericks began treating Stuart on January 19, 1998. Following various tests, including an MRI, Dr. Fred-ericks diagnosed Stuart’s condition as a herniated disc and an osteophyte, or bony spur, in the thorax. Stuart was referred to a neurosurgeon Dr. Philip Azordegan, for surgery. However, Dr. Fredericks continued to see Stuart. Dr. Fredericks opined that it was more likely than not the event that caused Stuart’s back condition had occurred within two weeks of when she first saw him on January 19, 1998, but she did not know what the event was.
¶ 6. During this time, Stuart connected his back pain to the previous accident in November. A petition to controvert was filed and a hearing was held before an administrative law judge. Several persons and doctors testified at the hearing. Stuart’s wife, son and several friends and family corroborated Stuart’s testimony as to the onset of the pain after the accident in New Jersey. Dr. Fredericks also testified that if Stuart was experiencing some pain on the flight home that had gradually worsened into intense pain, it was possible that the accident had caused Stuart’s injuries.
¶ 7. Amy Fineman-Gamarra who became Stuart’s supervisor in January 1998 testified that Stuart contacted her regarding his inability to work and claimed to have been injured in the November 1997 accident in New Jersey. However, Stuart’s former supervisor, Marta Schroeder testified that Stuart had requested a single room while in New Jersey due to back problems. Stuart denied that he made this statement. Sehroeder testified that Stuart told her about the accident, but stated that he was not injured.
¶ 8. Dr. Philip Azordegan, a board certified neurosurgeon, who first treated Stuart on January 28, 1998 testified that he had operated on Stuart and removed a disc fragment and an osteophyte. Dr. Azorde-gan opined that if Stuart had only experienced pain one week prior to his visit to the emergency room then the accident and injury were not related. However, if Stuart experienced some discomfort shortly after the accident that progressively worsened, then the accident and Stuart’s condition were probably connected. He also concluded that Stuart had attained *434 maximum medical improvement on April 27,1998.
¶ 9. Stuart also was treated by Dr. Ronald Davis, a urologist, who testified through deposition. Dr. Davis began treating Stuart on January 29, 1998, for difficulty urinating and erectile dysfunction. On May 28, 1998, Dr. Davis concluded that Stuart’s condition was most likely related to the thoracic disc herniation, but also an enlarged prostate. When posed the hypothetical that Stuart’s problems began soon after the accident, Dr. Davis opined that it was likely that the accident had caused the symptoms.
¶ 10. Dr. Bruce Senter also testified by deposition. He began seeing Stuart on May 19, 1998. Based on the results of a thoracic discography and CT scan, Dr. Senter recommended surgery and performed disc fusions at three levels. The fusions failed and Dr. Senter then inserted rods and hooks in Stuart’s back on January 7, 1999. Dr. Senter opined that if Stuart had no symptoms for two months after the accident, it was unlikely the accident had caused the herniated disc. On the other hand, if Stuart experienced tenderness in his back, bladder problems, and sexual dysfunction soon after the accident, it was likely the accident had caused those symptoms. Dr. Senter assigned Stuart an impairment rating of seventeen percent to the body as a whole, but in the absence of a functional capacity examination, did not impose any work restrictions on Stuart. Dr. Senter referred Stuart to Dr. Adam Lewis, a neurosurgeon.
¶ 11. Dr. Lewis implanted a morphine pump on June 2, 1999, and spinal cord stimulator on February 10, 2000. Dr. Lewis testified that acute thoracic trauma resulting in annular tears and herniation promotes symptoms right away rather than being characterized by a vague onset in the troubled area. When asked if the accident could have caused Stuart’s annular tears and herniation, Dr. Lewis said it was a possibility.
¶ 12. At the request of the employer/carrier, Dr. Robert Smith examined Stuart on December 28, 1999. Dr. Smith stated that Stuart expressed having pain which acutely intensified within a week prior to the date of his visit to the emergency room. According to Dr. Senter, it was his opinion that the herniation would have occurred early in the second week of January 1998. According to Smith, had the herniation occurred on November 7, 1997, Stuart should have been experiencing intense pain, seeking medical attention, taking pain medication and not working. Thus, he concluded the motor vehicle accident had nothing to do with Stuart’s symptoms or with his resulting disability. He did state, however, that if Stuart had felt discomfort soon after the accident, which had intensified into pain, it was more likely than not that there was a connection between the accident and the herniation.
¶ 13. Dr. Howard Smith examined Stuart’s records and other doctors’ depositions at the request of the employer/carrier. Dr. Howard Smith concluded that Stuart’s herniated disc was not related to the accident and had probably occurred in January 1998.
¶ 14. The administrative law judge found a causal connection between the accident and Stuart’s injury, and determined him to be permanently and totally disabled. Janssen appealed this finding to the Full Commission, which reversed and dismissed Stuart’s claim. Upon appeal by Stuart the Rankin County Circuit Court reversed the Full Commission and reinstated the administrative law judge’s ruling.
ANALYSIS OF THE ISSUES PRESENTED
¶ 15. Janssen argues that the circuit court erred in substituting its opinion for *435 that of the Mississippi Workers’ Compensation Commission, the finders of fact, in deference to the abundance of substantial evidence denying the claim of Stuart. Additionally, Janssen argues that the circuit court applied an erroneous standard of review. Although this appeal comes from the Rankin County Circuit Court, it is really the decision of the Mississippi Workers’ Compensation Commission which we will review and our standard of review is well settled.
STANDARD OF REVIEW
¶ 16. In reviewing a decision of the Workers’ Compensation Commission, this Court gives great deference to the Commission’s determination and will only reverse it for an error of law, or when its decision is not supported by substantial evidence. Comacchione v. Forrest County General Hospital, 755 So.2d 422, 424 (¶ 12) (Miss.Ct.App.1998). The Commission is the finder of fact, and determines the weight and credibility to be accorded the evidence, and this Court is bound to accept that determination. City of Laurel v. Blackledge, 755 So.2d 573, 576 (¶ 20) (Miss.Ct.App.2000); Comacchione, 755 So.2d at 425 (¶ 17). If the Commission’s findings are supported by substantial evidence, all appellate courts are bound by the Commission’s findings, even if the evidence would persuade this Court to find otherwise, if it were the fact finder. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 12 (Miss.1994); Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988).
DISCUSSION OF THE ISSUE
¶ 17. In reviewing the opinion of the administrative law judge, the Commission determined that the crucial question was whether there was a causal connection between the motor vehicle accident and the claimant’s injury and disability. In a very detailed and thoughtful opinion, the Commission thoroughly reviewed each doctor’s testimony in an effort to determine if the medical evidence supported the findings of the administrative law judge.
¶ 18. The Commission pointed out that Dr. Adam Lewis, a board certified neurosurgeon, when asked a hypothetical question which included the history of the motor vehicle accident, the travel home, the claimant’s work history for the sixty days following the accident, and the symptoms as testified to by the claimant, opined that he would certainly expect spasm or complications to have occurred sooner if the accident had been the genesis of the annular tears and herniation. He testified that acute thoracic trauma resulting in annular tears and herniation promotes symptoms “right away” rather than being characterized by a “vague onset in the troubled area.”
¶ 19. The Commission examined the testimony of Dr. Azordegan who said his records showed that Stuart had only experienced pain one week prior to his visit to the emergency room and if that were true, then the accident and injury were not related. The Commission pointed out that the same opinion, that Stuart’s injury likely occurred sometime in the few weeks prior to his emergency room visit, was reached by Dr. Davis, Dr. Senter, Dr. Robert Smith and Dr. Howard Smith. With the exception of Dr. Howard Smith, each doctor found it only possible that the accident resulted in the injuries and disabilities suffered by Stuart. Dr. Howard Smith concluded that it was not even possible that the motor vehicle accident and Stuart’s injuries were related.
¶20. Dr. Fredericks testified that if Stuart felt tenderness in his back during his plane flight on November 7, 1997, and that tenderness had increased in intensity until he was forced to go to the emergency *436 room on January 14, 1998, because of that pain, it would be more probable than not that the motor vehicle accident caused his condition. However, Dr. Fredericks also said that it was more likely than not that Stuart’s condition arose within two weeks of his initial visit on January 19, 1998.
¶ 21. The Commission noted the conflict in the doctors’ testimony concerning the differing fact patterns presented pertaining to the time period when Stuart began experiencing pain. As the trier of fact, the Commission resolved that conflict in favor of Janssen. When the Commission’s decision is consistent with law, and is supported by substantial evidence, this Court must affirm that decision. Georgia-Pacific Corp. v. James, 733 So.2d 875, 876 (¶ 8) (Miss.Ct.App.1999).
¶ 22. In making this decision, the Commission placed particular importance on the use of the word “possible” in the doctors’ opinions. The Commission explained that in workers’ compensation cases, the claimant has the burden to show an accidental injury arising out of and in the course of employment and a causal connection between the injury and the claimed disability. It stated the opinion of the doctors does not sound in terms of reasonable and dependable medical probabilities, but merely in terms of possibility. They went on to explain that the best that can be said is that,
[w]hen basing testimony on hypotheti-cals that reflect that the claimant began to experience pain resulting from a “tenderness” immediately after the accident, that the pain may have resulted from the accident as likely as having resulted from some other event close in time to the date of January 14, 1998 when the claimant presented himself to the emergency room. This is insufficient.
¶ 23. The Commission stated that even though medical evidence is to be given liberal construction and that doubtful cases should be resolved in favor of compensation, the Commission is called upon to apply “common knowledge, common experience and common sense” when weighing the evidence. See Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989); Hill v. United Timber & Lumber Co., 68 So.2d 420, 424 (Miss.1953). The adherence to a liberal standard does not avoid the requirement that the claimant must offer proof in order to recover.
¶ 24. It is well settled that proof of causal connection must rise above mere possibility. Fought, 523 So.2d at 317. These types of cases require expert medical opinion to help establish causation. V. Dunn, Mississippi Workers’ Compensation Commission § 273 (3d ed.1982).
¶ 25. The Commission indicated that its decision was not based on medical proof alone. The Commission weighed several factors in addition to the medical testimony. These factors were: 1) Stuart’s behavior for the 60 days immediately following the accident was not consistent with the behavior and pain response of an individual who had suffered the type of injury Stuart claimed, 2) Stuart’s recollection of the accident itself was contradicted by the limousine driver and by the trooper assigned to investigate the case, 3) Stuart’s failure to mention the accident and injury to his immediate supervisor, and 4) Stuart’s stoicism for 60 days in light of the nature of his injury.[1]
*437 ¶26. The Commission, after detailing and carefully weighing all the medical testimony, coupled with the uncontradicted lay proof, found that Stuart’s disability was not causally connected to his involvement in a work related motor vehicle accident. This Court finds there was sufficient evidence for the Commission to find that Stuart’s injuries were not the result of a work related accident.
¶ 27. This Court finds that substantial evidence existed to support the decision of the Commission and therefore reverses the decision of the Rankin County Circuit Court, and affirms the decision of the Commission.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED AND THE DECISION OF THE WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS, and GRIFFIS, JJ., CONCUR.
CHANDLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.

. With regard to issue number four, the Commission noted with approval a Mississippi Supreme Court case which stated that a back injury does not ordinarily produce a " 'taciturn' ” claimant. Hudson v. Keystone Seneca Wire Cloth Co., 482 So.2d 226, 228 (Miss.1986).