GRIFFIS, P.J.,
for the Court:
¶ 1. Sarah Braxton appeals the circuit court’s judgment affirming the decision of the Workers’ Compensation Commission that problems with her right knee were not caused by an on-the-job injury she sustained on September 21, 2007. She claims that the Commission’s decision is not supported by substantial evidence. We find no error and affirm.
FACTS
¶ 2. Braxton was an employee of Resorts Casino. She suffered an on-the-job injury on September 21, 2007, when she fell down four stairs on her way from the break room to her work station. The parties stipulated that Braxton suffered this work-related injury and that she injured her left knee, left hip, and right shoulder. The only issues presented to the administrative judge (AJ) were: (1) whether Braxton injured her right knee in the fall, and, if so, (2) whether the current treatment of her right knee, including a total/partial knee *108 replacement, was reasonable and necessary.
¶ 3. At the time of the hearing, Braxton had been a dealer for Resorts Casino for about two and a half years. She also worked as a bus driver for ICS Headstart. Braxton had been treated for issues with her right knee before her fall, but she had been problem free for approximately seventeen months.
¶ 4. Braxton reported the fall to the security supervisor. She claimed that she thought she reported pain in her right knee. However, the written report of the incident signed by Braxton refers to her left knee. Braxton was transported to Baptist Memorial Hospital — DeSoto (“Baptist Hospital”), where she again reported an injury to her left knee. X-rays were made of her right shoulder, left hip, and left knee.
¶ 5. Almost three months later, Braxton saw Lydia Franklin, her nurse practitioner, with a complaint of right-knee pain. She told Franklin that her symptoms had lasted the past few days and were not getting better. On January 5, 2008, Brax-ton presented to the emergency room at Baptist Hospital. She claimed that she had injured her right knee on September 21, 2007. Braxton’s right knee was x-rayed, and she was referred to Dr. John Lochemes, an orthopedic physician. Brax-ton told Dr. Lochemes that she had injured her right knee in a fall at work.
¶ 6. Dr. Lochemes performed a partial medial meniscectomy and chondroplasty of the patella on her right knee on February 22, 2008. On June 4, 2008, Dr. Lochemes said that Braxton had osteoarthritis that was unrelated to the injury.
¶ 7. Braxton returned to see Dr. Lo-chemes in August 2008. An MRI showed advanced degenerative changes since her meniscectomy. He discussed possible joint replacement to address the arthritis, which Dr. Lochemes said would not be “workers’ compensation] related treatment.” When Braxton returned on September 24, 2008, with further complaints of pain, Dr. Lochemes suggested a total joint replacement “for the underlying osteoar-thritic condition that has not been advanced or aggravated by the workers’] compensation] injury.”
¶ 8. Dr. Gregory Dabov performed an independent medical examination on November 26, 2008. He indicated that Brax-ton’s problem with her right knee was related to her work injury. However, Dr. Dabov later admitted that he based that conclusion on the history given to him by Braxton. Dr. Dabov agreed that there was no evidence in Braxton’s medical records between the fall on September 21, 2007, and January 5, 2008, that indicated an injury to her right knee.
¶ 9. Dr. Dabov had actually seen Brax-ton for complaints of right-knee pain on April 21, 2006, eighteen months before her work injury. Braxton told Dr. Dabov that she had a long history of right-knee pain and had been through knee injections for at least four years. This was accurate because Braxton saw Dr. Robert Pickering more than six years before the fall, complaining of problems with both knees. Dr. Dabov prescribed physical therapy, knee injections, and anti-inflammatory medications.
¶ 10. After a hearing, the AJ determined that Braxton had failed to prove that she sustained an injury to her right knee in her fall on September 21, 2007. The Commission affirmed the order of the AJ without further comment. The circuit court affirmed the Commission’s decision.
¶ 11. The issue on appeal is whether substantial evidence supported the Commission’s decision that Braxton did not *109 injure her right knee as a result of her fall on September 21, 2007.
STANDARD OF REVIEW
¶ 12. This Court’s scope of review in workers’ compensation cases is limited to a determination of whether the decision of the Commission is supported by substantial evidence. Westmoreland v. Landmark Furniture, Inc., 752 So.2d 444, 447 (¶ 7) (Miss.Ct.App.1999). Substantial evidence is “such relevant evidence as reasonable minds might accept as adequate to support a conclusion.” Langford v. Southland Trucking, LLC, 30 So.3d 1266, 1275 (¶ 28) (Miss.Ct.App.2010). The Commission sits as the ultimate finder of fact, and “its findings are subject to normal, deferential standards upon review.” Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission’s ruling when its findings of fact are unsupported by substantial evidence or the decision was arbitrary and capricious. See Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224-25 (Miss.1997). “Matters of law are reviewed under the de novo standard of review.” Westmoreland, 752 So.2d at 448 (¶ 8).
ANALYSIS
¶ 13. Proof of a causal connection between Braxton’s fall at work and her right knee problems “must rise above mere possibility.” Janssen Pharmaceutica, Inc. v. Stuart, 856 So.2d 431, 436 (¶ 24) (Miss.Ct.App.2003). The Commission applied its “common knowledge, common experience!,] and common sense” when it weighed the evidence here. Id. at (¶ 23). There is substantial evidence supporting the Commission’s decision that the condition of Braxton’s right knee was unrelated to her fall at work, as shown below.
¶ 14. Braxton’s right knee pain occurred before her work fall. Campbell Clinic’s records demonstrate a history of knee pain in both knees for several years before the fall. In July of 2001, Braxton saw Dr. Pickering and complained of problems with both knees. Dr. Pickering diagnosed her with patellofemoral arthritis in 2001. He prescribed Celebrex for her treatment. In August 2001, Braxton said that Celebrex helped with her left knee, but she still had pain in her right knee.
¶ 15. In 2003, Braxton saw Nurse Franklin, complaining of knee pain. The records were not clear on which knee was treated.
¶ 16. In April 2006, she saw Dr. Dabov for pain in her right knee. Braxton told Dr. Dabov that she had a long history of right-knee pain. She told him she had her knee injected for at least four years. Dr. Dabov’s records indicate that Braxton had insidious onset, meaning there was no inciting or traumatic event. Dr. Dabov diagnosed internal derangement to the right knee with some patellofemoral syndrome. He prescribed physical therapy, right knee injections, and anti-inflammatory medications.
¶ 17. The statement Braxton signed at her job on the day of the fall indicated no complaints about her right knee. The hospital records on the day of the fall do not indicate any complaints about her right knee. She only complained about her right shoulder, left hip, and left knee. X-rays were taken only of her right shoulder, left hip, and left knee. No x-ray was taken of her right knee.
¶ 18. Braxton returned to work with no restrictions after only one day off. She did not return to any medical professional until three months after her fall, when she visited Nurse Franklin in December 2007.
¶ 19. This was the first time she complained of right-knee pain, except for when she received medical treatment before her *110 fall. Braxton told Nurse Franklin that the symptoms in her right knee had only occurred in the last few days before her visit. The records do not indicate that Braxton told Nurse Franklin that she injured her right knee at work. In 2008 and 2009, Braxton continued to see Nurse Franklin for multiple complaints.
¶ 20. In January 2008, Braxton went to the emergency room for her right knee. She was referred to Dr. Lochemes. The x-ray from that visit was important to the AJ because it was after the fall but before her surgery. The x-ray showed only minimal degenerative changes. An MRI showed the need for surgery, a partial medial meniscectomy and chondroplasty of the patella on her right knee. She had this surgery in February 2008.
¶21. In March and April 2008, Dr. Lochemes removed fluid from Braxton’s right knee. In June 2008, he diagnosed her with osteoarthritis in the right knee. In August 2008, Dr. Lochemes stated that the effusion Braxton complained of was consistent with osteoarthritis. The MRI of her right knee in August 2008 indicated advanced degenerative changes.
¶ 22. Dr. Lochemes told Braxton that replacing the right knee joint to address the arthritis would “not be workers’ compensation] related treatment.” On Braxton’s last visit to Dr. Lochemes in September 2008, Dr. Lochemes noted that Braxton did not want to acknowledge that her knee symptoms were from the arthritis. He also recommended a “total joint replacement for the underlying osteoar-thritic condition that has not been advanced or aggravated by the work[ers’] comp[ensation] injury.”
¶ 28. Dr. Lochemes considered Brax-ton’s complete medical history. The AJ placed greater weight on Dr. Lochemes’ testimony because Dr. Lochemes considered Braxton’s complete medical history and because of all the medical tests he ordered.
¶ 24. In November 2008, Dr. Dabov again examined Braxton. Dr. Dabov did not have Braxton’s records from September 2007 or January 2008. He had records of visits in 2006 about her knees before the fall. He based' his conclusion that her right knee condition was related to the work accident on the history given to him by the patient. He stated he had assumed she had injured her -right knee at work because the right knee was the knee that was operated on, and the records were not clear on which knee, sometimes referring to the left knee.
¶ 25. The records and conclusions from the physicians listed above provide substantial evidence that Braxton’s problems with her right knee were unrelated to her fall at work. Under our standard of review in this case, we cannot judge the individual credibility of each physician. If the Commission’s decision is supported by substantial credible evidence, we must defer to that decision. In this case, there exists substantial evidence sufficient to support a finding that Braxton did not injure her right knee when she fell at work. Accordingly, we find Braxton’s argument that the decisions of the AJ and the Commission were not supported by substantial evidence to be without merit.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ„ CONCUR.