752 So.2d 444 (1999)
David WESTMORELAND, Appellant,
v.
LANDMARK FURNITURE, INC. and Wausau, Appellees.
No. 1998-WC-01729-COA.
Court of Appeals of Mississippi.
November 23, 1999.
*446 William Lowery Sneed, Pontotoc, Attorney for Appellant.
Michael G. Soper, Tupelo, Attorney for Appellees.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
THOMAS, J., for the Court:
¶ 1. This is a workers' compensation case. David Westmoreland appeals the decision of the Pontotoc County Circuit Court affirming the Mississippi Workers' Compensation Commission's denial of temporary total and permanent partial disability benefits for claimant's asserted loss of wage earning capacity. On appeal, Westmoreland raises the following assignments of error
I. WHETHER WESTMORELAND'S INJURY WAS CAUSED BY, CONTRIBUTED TO OR AGGRAVATED BY HIS EMPLOYMENT WITH LANDMARK FURNITURE COMPANY.
II. WHETHER APPORTIONMENT OF THE BENEFITS AWARDED BY THE ADMINISTRATIVE LAW JUDGE WAS PROPER.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On October 19, 1995, Westmoreland was working for Landmark Furniture Company in Pontotoc, Mississippi. He testified that he began his work day at around 7:00 a.m. and continued to work until around 8:00 a.m., the time of his injury. According to Westmoreland he and a fellow co-worker were moving a piece of furniture from one table to the next when he felt a "pop or a pull" in his back and began to experience pain. He stated that he continued to work, but that when he attempted to move the next piece of furniture to his table, the pain was so great that he could not completely lift the furniture piece. Westmoreland testified that he then went to see Randall Holcomb, the production line supervisor, about his injury. The plant supervisor, Truitt Clayton, was also informed of the situation. Landmark made an appointment for Westmoreland to see Dr. Paul Whiteside at 9:00 a.m. that same morning. A physical examination was performed by Dr. Whiteside, and Westmoreland was excused from work for the remainder of the week. He returned to work the following week but continued to experience pain in his lower back. Westmoreland again informed Holcomb of the situation, and a second appointment with Dr. Whiteside was made. Following his second visit with Dr. Whiteside, Westmoreland was placed in a light duty capacity.
¶ 4. Westmoreland testified that he continued to work as best he could until mid to late December when at such time the pain became so great that he could barely function. After returning to work from the Christmas holidays, Clayton inquired as to Westmoreland's progress, to which *447 he responded that he had a difficult time over the holidays with his back pain. Landmark then made a third doctor's appointment for Westmoreland. This appointment was with Dr. Walter Eckman, a board certified neurosurgeon in Tupelo, Mississippi. Following Dr. Eckman's examination, which consisted of a physical examination and a MRI, Westmoreland was returned to light duty and placed on a physical therapy program by Dr. Eckman. However, Westmoreland became dissatisfied with the requirements of the physical therapy program proscribed by Dr. Eckman and soon thereafter quit the program. He then requested from Landmark that he be allowed to see a physician of his choice. Westmoreland's choice was Dr. Marvin Leventhal, an orthopaedist, with the Campbell Clinic in Pontotoc, Mississippi. Westmoreland was removed from any type of work for a period of two weeks per Dr. Leventhal's orders. After seeing Dr. Leventhal for the second time, Westmoreland was allowed to return to work at Landmark in a light duty capacity, which he did for several months until Westmoreland quit Landmark on his own volition to secure employment as a meat cutter at the Jitney Jungle Supermarket in New Albany, Mississippi.
¶ 5. Westmoreland filed his petition to controvert on February 20, 1996. Following a hearing before an administrative law judge, Westmoreland was granted temporary total benefits in the amount of $252.59 per week commencing October 19, 1995 and payable through August 9, 1996 with appropriate credits for payments heretofore made by the employer and carrier. Permanent partial benefits of $25 per week were also awarded commencing August 9, 1996, for a period of 450 weeks. Landmark appealed to the Full Commission on June 16, 1997. From that appeal, the Full Commission reversed the prior decision of the administrative law judge awarding compensation. The Full Commission dismissed Westmoreland's claim based on what it found to be a claim founded on speculation, surmise, conjecture and the like. In support of its decision, the Full Commission noted that Westmoreland's testimony was often contradicted or not entirely supported by that of his co-workers and that the contradictory and at times incomplete medical histories provided by Westmoreland to the various doctors who treated him gives rise to a less than credible claim. On these findings, Westmoreland's claim was dismissed. Likewise, the circuit court affirmed the decision reached by the Full Commission.

ANALYSIS

I.

WHETHER WESTMORELAND'S INJURY WAS CAUSED BY, CONTRIBUTED TO OR AGGRAVATED BY HIS EMPLOYMENT WITH LANDMARK FURNITURE COMPANY.
¶ 6. Westmoreland appeals the decision of the Full Commission, as affirmed by the Pontotoc County Circuit Court, denying his claim for compensation under Mississippi workers' compensation law. Westmoreland asserts that substantial evidence of a compensable injury was presented before the Full Commission and the circuit court.
¶ 7. Our standard of review in workers' compensation cases mandates that we are limited in scope when reviewing factual issues on appeal from the Commission and are bound by the following:
Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; ... "[W]hile appeals to the Supreme Court *448 are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."
As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."
Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991) (citations omitted).
¶ 8. The Commission sits as the "ultimate finder of facts" in deciding compensation cases; and therefore, "its findings are subject to normal, deferential standards upon review." Natchez Equipment Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993). Matters of law are reviewed under the de novo standard of review. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308(1112) (Miss.1997). We will only reverse the Commission's rulings where issues of fact are unsupported by substantial evidence and matters of law are clearly erroneous.
¶ 9. We now turn to the issue at hand: whether Westmoreland did in fact sustain a compensable back injury in the scope and course of his employment at Landmark as he has alleged. In order that we gain a complete understanding of Westmoreland's medical history, we turn to the primordial events which were found by the Full Commission to have had direct bearing on the disposition of Westmoreland's claim.
¶ 10. The medical evidence, as substantiated in part by Westmoreland's own testimony, reveals that in 1987 and 1990, he suffered multiple back injuries while employed by other employers. He recovered from those injuries following brief periods of disability and returned to full time employment. The first injury occurred while he was employed at Claybrook Furniture Company in December of 1987 while he was lifting a sofa. He was treated by Dr. James W. Speck and diagnosed with a "central bulging of disk material at L-4-5 and L-5-S-1." Dr. Speck prescribed limited activity and home rest for approximately two to three weeks. Light activity was prescribed following his return to work prior to returning to full duty. The second injury to Westmoreland's lower back similarly occurred while he was lifting a piece of furniture during his employment with Washington Furniture Company in July of 1990. On this occasion, Westmoreland was treated by Drs. Flavia H. West and Walter Eckman. Westmoreland described this particular injury as a "popping" sound that came from his lower back during the lift. Drs. West and Eckman concluded that he suffered from spondylolisthesis at L-5 on S-1 and a "slight narrowing of the L-4 to L-5 disc space." Conservative treatment for two weeks was prescribed which consisted of light activity and plenty of rest for his back. Dr. Eckman noted improvement upon a follow-up visit one month later and released Westmoreland to return to full duty. Dr. Eckman further advised Westmoreland of the spondylolisthesis and/or the bulging discs at levels L-5 and S-1 of the back and that he would continue to experience intermittent problems with his back and that work which consists of significant lifting or twisting should be avoided.
¶ 11. On September 25, 1995, while carrying a load of firewood into his home, Westmoreland again injured his back and sought medical treatment from Dr. West. Westmoreland testified that while he was carrying some firewood, he accidently stepped on a small stick which caused him to stumble. He indicated that the stumble *449 caused him to twist and that it appeared to catch the back muscle on his left side. He was excused from work for the remainder of the week and prescribed muscle relaxers. Westmoreland did return to full duty the following week after a brief period of home rest.
¶ 12. The instant injury incident, which Westmoreland asserts as the basis of his workers' compensation claim, occurred in the early morning work hours of October 19, 1995 at Landmark Furniture Company, or approximately three and one-half weeks after his injury at home on September 25, 1995. He testified that he began his work day at around 7:00 a.m. and continued to work until around 8:00 a.m., the time of his injury. According to Westmoreland, he and a fellow co-worker were moving a piece of furniture from one table to the next when he felt a "pop or a pull" in his back. He testified that he began to experience pain in that area shortly, if not immediately, after the "pop or pull." He stated that he continued to work, but that when he attempted to move the next piece of furniture to his table, the pain was so great that he could not completely lift the piece of furniture. We note, however, that Westmoreland could not specifically recall anyone in particular who may have been nearby or assisted him at the time of his injury.
¶ 13. Larry McDonald, a co-worker, testified that he does not recall ever seeing Westmoreland injure himself nor remember hearing him complain of an injury on the morning of October 19, 1995, and that he was working approximately ten to fifteen feet from him. McDonald testified that the first time he learned of Westmoreland's injury was after the production line supervisor, Randall Holcomb, approached him that same morning and asked if he could find some light duty work for Westmoreland to do until his scheduled doctor's appointment.
¶ 14. Michael Leslie Williams, another co-worker, also testified that he did not recall ever seeing Westmoreland injure himself or complain of an injury on the morning of October 19, 1995. Williams further testified that he had heard Westmoreland state that morning that he was not going to work very hard that day and that soon after the day began, Westmoreland went for a smoke break. When Westmoreland returned from his break, Williams stated that he observed Westmoreland speaking with Holcomb about what had happened.
¶ 15. This is contradicting testimony. We address the matter of such testimony with sensitivity when the claimant is the sole witness to the alleged incident which gives rise to a claim for compensation from a work related injury. When the testimony is undisputed and not so unreasonable as to be unbelievable, taking into account the factual setting of the claim, the claimant's testimony generally ought to be accepted as true. White v. Superior Products, Inc., 515 So.2d 924, 927 (Miss. 1987). Likewise, the Commission, sitting as judge of the credibility of the witnesses, has the authority to accept or reject testimony depending on the circumstances which demonstrates the degree of trustworthiness or credibility accompanying the testimony at issue. Id. "[N]egative testimony concerning the cause of injury may be substantial evidence upon which a claim may be denied." Id. We keep this in mind when reviewing contradictory testimony.
¶ 16. Returning to Westmoreland's version of the events that morning, Westmoreland testified that he went to see Randall Holcomb, the production line supervisor, about his injury. The plant supervisor, Truitt Clayton, was also informed of the situation. Landmark made an appointment for Westmoreland to see Dr. Paul Whiteside at 9:00 a.m. that same morning. A physical examination was performed by Dr. Whiteside and Westmoreland was excused from work for the remainder of the week. He returned to work the following week but continued to experience pain in his lower back. Westmoreland *450 again informed Holcomb of the situation and a second appointment with Dr. Whiteside was made. Following his second visit with Dr. Whiteside, Westmoreland was placed in a light duty capacity. Westmoreland testified that he continued to work as best he could until mid to late December when at such time the pain became so great that he could barely function.
¶ 17. After returning to work from the Christmas holidays, Clayton inquired as to Westmoreland's progress, to which he responded that he had a difficult time over the holidays with his back pain. Landmark then made a third doctor's appointment for Westmoreland. This appointment was with Dr. Walter Eckman, a board certified neurosurgeon in Tupelo, Mississippi. Following Dr. Eckman's examination, which consisted of a physical examination and a MRI, Westmoreland was returned to light duty and placed on a physical therapy program by Dr. Eckman. However, Westmoreland became dissatisfied with the requirements of the physical therapy program prescribed by Dr. Eckman and soon thereafter quit the program. He then requested from Landmark that he be allowed to see a physician of his choice. Westmoreland's choice was Dr. Marvin Leventhal, an orthopaedist, with the Campbell Clinic in Pontotoc, Mississippi. Westmoreland was removed from any type of work for a period of two weeks per Dr. Leventhal's orders. After seeing Dr. Leventhal for the second time, Westmoreland was allowed to return to work at Landmark in a light duty capacity, which he did for several months until Westmoreland quit Landmark on his own volition to secure employment as a meat cutter at the Jitney Jungle Supermarket in New Albany, Mississippi.
¶ 18. Medical evidence elicited during Dr. Leventhal's deposition reveals that Westmoreland failed to provide him with an accurate and full medical history. Dr. Leventhal testified that he first saw Westmoreland on January 10, 1996. Dr. Leventhal stated that the visit was not the result of a referral from a fellow doctor, but rather he learned of Westmoreland's need for treatment through Westmoreland's wife, whom Dr. Leventhal had treated on a prior occasion. Dr. Leventhal stated that he was unaware of Westmoreland's previous injuries while employed at Claybrook and Washington furniture companies, nor was he aware of Westmoreland's September 25, 1995 back injury suffered at home. When advised of these undisclosed injuries, Dr. Leventhal agreed that prior knowledge of those incidents would have affected his original opinion as to the attributable incident which caused Westmoreland's condition. Dr. Leventhal further agreed that the September 25, 1995 incident at home could be just as likely to have been the attributable incident as the October 19, 1995 incident at Landmark. Dr. Leventhal further conceded, in light of the full history, that the fourteen percent impairment rating he gave Westmoreland could have been present and justified on the basis of Westmoreland's condition before the alleged occurrence of an injury on October 19, 1995.
¶ 19. Dr. Robert Barnett, an orthopedic surgeon, performed an independent examination of Westmoreland at Westmoreland's request on December 2, 1996. Based on that evaluation, Dr. Barnett assigned a seven percent impairment rating to Westmoreland. Dr. Barnett reached essentially the same diagnosis as Drs. West, Eckman, and Leventhal regarding a central disc bulge at level L4-5 and spondylolisthesis. Dr. Barnett conceded that the central disc was known to have been present prior to Westmoreland's alleged injury on October 19, 1995, at least since December 1987, as well as the spondylolisthesis. Dr. Barnett opined that the spondylolthesis could be a congenital defect in his lower back and that the bulging disc could be due to degenerative changes, but that he could not accurately date the origin of the bulging disc. Dr. Barnett, like Dr. Leventhal, could not attribute Westmoreland's condition *451 to the October 19, 1995 lifting incident at Landmark any more than he could attribute his condition to the incident that occurred at Westmoreland's home on September 25, 1995.
¶ 20. Additional medical evidence was presented by Dr. Thomas McDonald, a board certified neurosurgeon, upon seeing Westmoreland for an independent medical examination on August 2, 1996. However, having reviewed the deposition testimony of Dr. McDonald, we find that Dr. McDonald's testimony is merely cumulative and adds nothing new to that which we have already discussed. Dr. McDonald also opined that the cause of Westmoreland's current condition was no more likely to have occurred on October 19, 1995, than on September 25, 1995.
¶ 21. A large portion of this evidence weighs heavily against Westmoreland's assertions that the cause of his current medical state is due to the alleged October 19, 1995 incident at Landmark. We note, as was noted by the Full Commission, that Westmoreland's version of the events which transpired on the morning of October 19, 1995 were at times contradicted and unsupported by the testimony given by two of his co-workers. This is in addition to the overwhelming medical testimony weighing against Westmoreland, as well as the medical testimony which reveals Westmoreland's failure to provide accurate and complete medical histories to the various doctors who provided medical treatment and rendered diagnoses. These omissions were the basis for the modifications to the respective diagnoses made by Drs. Leventhal, Barnett and McDonald.
¶ 22. We agree with the Full Commission that speculation, surmise, conjecture and the like have no place in their decisions, and that not even a liberal interpretation of the law and evidence will permit the Commission to forge an otherwise questionable claim into some compensable shape or form. See generally, Toldson v. Anderson-Tully Co., 724 So.2d 399 (¶ 11-12) (Miss.Ct.App.1998); DUNN, MISSISSIPPI WORKMAN'S COMPENSATION § § 260-282 (3d ed. 1982 & Supp.1988). In view of the normal deferential standards we are required to give the Commission in reviewing their findings of fact, we will only reverse the Commission's rulings where issues of fact are unsupported by substantial evidence. Natchez Equipment Co., Inc., 623 So.2d at 273. Matters of law are reviewed de novo and are reversed only when application of the law is clearly erroneous. Spann, 700 So.2d at 399 (¶ 12). We hold that substantial evidence does exist from which to support the Commission's findings, as evidenced by the facts of this case. We likewise hold that the Commission's decision to deny Westmoreland the disability benefits he seeks is without error of law as well. This assignment is without merit.

II.

WHETHER APPORTIONMENT OF THE BENEFITS AWARDED BY THE ADMINISTRATIVE LAW JUDGE WAS PROPER.
¶ 23. Westmoreland asserts that the decision of the administrative law judge apportioning benefits was in error. We note that Westmoreland for the first time appeals to this Court the decision of the administrative law judge to apportionment benefits. This issue went unappealed before the Full Commission and is therefore subject to a procedural bar. In addition, Westmoreland's assignment of error need not be addressed by this Court in view of our disposition of his previous assignment. This assignment is procedurally barred.
¶ 24. THE JUDGMENT OF THE PONTOTOC COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, *452 IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. DIAZ, J., CONCURS IN RESULT ONLY.