MYERS, J.,
for the Court.
¶ 1. On October 17, 1994, Betty Levy filed a petition to controvert with the Mississippi Workers’ Compensation Commission. After various continuances and other delays, the administrative law judge finally denied benefits on April 6, 2001. Levy appealed to the Full Commission on April 9, 2001, and on August 10, 2001, the Full Commission upheld the decision to deny benefits. Levy then appealed to the Circuit Court of Holmes County. On January 27, 2004, the circuit court affirmed the decision of the Full Commission.
¶ 2. Aggrieved by this ruling, Levy now appeals, raising the following issues:
I. DID THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION ERR IN FINDING THAT LEVY DID NOT SUSTAIN A COM-PENSABLE INJURY TO HER LEFT UPPER EXTREMITY IN THE FORM OF A GANGLION CYST?
II. DID THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION ERR IN FINDING THAT LEVY DID NOT SUSTAIN A COM-PENSABLE INJURY TO HER RIGHT AND LEFT UPPER EXTREMITIES IN THE FORM OF CARPAL TUNNEL SYNDROME?
¶ 3. Finding no reversible error, we affirm the judgment of the circuit court.
FACTS
¶ 4. Levy went to work for Mississippi Uniforms in September of 1989 as a sewing machine operator. She sewed garments, and after a certain number of garments were completed, they would be bundled, tied, and then carried away for the next phase of production. The bundles contained approximately seventy-two garments, and, while there is some disagreement in' the record on this point, it appears that the bundles weighed approximately fifty to seventy-five pounds. While Mississippi Uniforms contends that other personnel were employed for the purpose of carrying the bundles of garments, the record reflects that Levy and other sewing machine operators, at least on occasion, were required to carry the completed bundles themselves.
¶ 5. On April 27, 1994, Levy complained of pain in her left wrist, and she attributed this pain to bundling, tying, and carrying the garments that she had sewn. On this day she also noticed a “knot” on her left wrist. She was taken to see the company doctor, Dr. Gilliland, on April 28, 1994. He examined her and found there to be a ganglion cyst on her left wrist, but he found that the causes of the cyst were not work related. He rendered no treatment and sent her back to work, indicating that whatever the problem with her wrist, his examination showed that she should still be able to do her work. Significantly, the day before Levy complained of the wrist pain and went to see the company doctor, she had received her tenth reprimand for low productivity since her employment began in 1989. This meant that she was on the verge of being terminated when she allegedly discovered the “knot” on her wrist that Dr. Gilliland diagnosed as a cyst.
¶ 6. Levy received a final warning for low productivity and was terminated on May 31, 1994. Tom Cox, the plant manager, testified that Levy was ultimately fired for refusing to sign the reprimand form, as required by company policy. In the years that followed, Levy saw several doctors regarding her wrist pain, and she eventually began to complain of problems with her right wrist as well as her left wrist. She received some treatments for these *1263 problems, but none of the treating physicians or surgeons ever found conclusively that the injury was caused by her employment at Mississippi Uniforms. Many of the doctors were unaware that Levy’s ailments had any relation at all to her work. Also, the alleged problems with her right hand did not begin to surface until some thirteen months after her employment with Mississippi Uniforms had ended.
¶ 7. Another significant fact is that in August of 1995, about the time that Levy began experiencing problems with her right wrist, the problems with her left wrist had disappeared; that is, Dr. Geis-sler, an orthopedic surgeon at University Orthopedic Clinic, at this time examined Levy and, while he did find a problem with her right wrist, he found her left wrist to be normal and not in need of any treatment.
LEGAL ANALYSIS
I. DID THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION ERR IN FINDING THAT LEVY DID NOT SUSTAIN A COM-PENSABLE INJURY TO HER LEFT UPPER EXTREMITY IN THE FORM OF A GANGLION CYST?
¶ 8. Levy argues that the findings of the Full Commission were not supported by substantial evidence, because the Commission accepted and relied upon the testimony of one doctor, Dr. Gilliland, to the exclusion of all the other medical evidence. In particular, Levy argues that the Commission failed to give proper weight to the testimony of her treating physicians. Mississippi Uniforms argues that Levy failed to produce sufficient evidence to show that her injury was work related and that the findings of the Commission were supported by substantial evidence.
STANDARD OF REVIEW
¶ 9. The standard of review in workers’ compensation cases is as follows:
Under our standard of review, it is difficult to overturn the decision of the Full Commission. “The standard of review in worker’s compensation cases is limited. The substantial evidence test is used.... The Workers’ Compensation Commission is the trier and finder of facts in a compensation claim. This court will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.”
Mississippi Baptist Medical Center v. Dependents of Mullett, 856 So.2d 612, 616(¶ 7) (Miss.Ct.App.2003) (citations omitted).
¶ 10. We have also said in this regard: Our scope of review is limited to a determination of whether or not the decision of the Full Commission is supported by substantial evidence. Westmoreland v. Landmark Furniture, 752 So.2d 444, 447(¶ 7) (Miss. [Ct.App.] 1999). This Court acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts. Id. “Substantial evidence, though not easily defined, means something more than a ‘mere scintilla’ of evidence, and that it does not rise to the level of ‘a preponderance of the evidence.’ ” Id. at 448(¶ 7). The Commission sits as the “ultimate finder of facts” in deciding compensation cases; therefore, “its findings are subject to normal, deferential standards upon review.” Natchez Equip. Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss.1993).
Craft v. Millcreek Rehabilitation Center, 854 So.2d 508, 511(¶ 5) (Miss.Ct.App.2003).
¶ 11. Thus, the standard of review for decisions of the Full Commission is very deferential, and we will only reverse *1264 where the findings of the Full Commission were not supported by substantial evidence.
DISCUSSION
¶ 12. Our review of the record leads us to conclude that there was substantial evidence to support the Full Commission’s findings on the first issue. What we find in the record simply does not support Levy’s assertion that Drs. Downer and Freeland, two of her treating physicians, clearly found her injury to be work related. We find the testimony of Drs. Downer and Freeland to lend, at best, very little support to Levy’s case and in many respects to flatly contradict her assertions.
¶ 13. For example, Dr. Downer testified in his deposition, “I have no direct indication that it [the injury to her left wrist] was caused by it [her work environment] .... ” This statement flatly contradicts Levy’s assertion that Dr. Downer clearly found her injury to be work related. After making this statement he went on to say, “but ... it’s [the injury to her left wrist] certainly compatible with her work history.” This statement, taken by itself and in isolation from its context, appears to lend some support to Levy’s claim; however, Dr. Downer also testified in his deposition, “A ganglion cyst can develop without any repetitive work whatsoever .... Any of us can develop a ganglion cyst because it’s simply a protrusion of the lining of the joint under the skin, and it can be — it can occur from most any type [of] activity....” This recognition of the fact that Levy’s injury could have been caused by any number of different activities simply does not square with Levy’s assertions. Therefore, we find Dr. Downer’s testimony to contain, at most, a reluctant acknowledgment of a possibility; such an acknowledgment can hardly be called a clear statement of medical opinion.
¶ 14. Dr. Freeland’s testimony follows a similar pattern. For instance, Dr. Free-land, in direct contradiction to Levy’s specious assertion noted above, testified in his deposition, “[D]id the pressures of work cause or not cause the cyst? In her case, in reviewing the chart, it appears to me the cyst developed after she had stopped working.” This statement falls far short of a clear finding that Levy’s injury was work related. Dr. Freeland also testified, “I can’t say, not being there, whether she injured herself at work or not....” He did go on to add, “[B]ut I can say that that story would be compatible with a work-related injury.... If she has established the chain of events as I just laid out, then I would say that is true within a reasonable medical probability.” After the declaration that he could not “say whether she injured herself at work or not,” the most significant words in this statement are the words of conditionality: “would” and “if.” While this statement might appear at first glance to support Levy’s claim, it could not, contrary to Levy’s assertions, be construed as a clear medical opinion, because it rests upon a disputed factual condition, namely, the accuracy of Levy’s story and whether she had established the chain of events referred to by Dr. Freeland. The Full Commission ultimately resolved this disputed factual condition in favor of Mississippi Uniforms.
¶ 15. We also note something else that damages Levy’s argument on this issue (and the second issue discussed below). Her argument, in effect, asks this Court to commit the very error she assigns against the Full Commission, namely, accepting the testimony of one or two doctors to the exclusion of all the other medical evidence as a whole. Even further, Levy asks us to accept various isolated statements of Drs. Downer and Freeland without regard to the testimony of these doctors as a whole. *1265 We would, of course, be disinclined to do this even if the other doctors had made clear statements of opinion; yet in this case, not only does the testimony of Drs. Downer and Freeland fail to prove Levy’s case, but also there is other medical evidence that lends very strong support to Mississippi Uniforms’s case. For example, Dr. Gilliland, the only doctor to render a firm opinion on the issue, said that the injury to Levy’s left wrist was not work related.
¶ 16. But we hasten now to point out that our examination of these various doctors’ statements is not intended to be a finding or weighing of evidence. The weight and credibility to be given to medical evidence and doctors’ testimony are factual issues to be decided by the Commission, not this Court. Craft, 854 So.2d at 511(¶ 5). In this case, where some doctors made non-committal or unclear statements of opinion, the Commission resolved the factual issues in favor of Mississippi Uniforms, and we may not reverse that finding even if we might have decided differently were we in the position of the Commission. Hardin’s Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss.1990) (holding that “fact-findings supported by substantial evidence must remain undisturbed ‘even though that evidence would not convince us’ were this Court the fact-finder.”). Our task is not to second guess the factual conclusions of the Commission, but to determine whether those conclusions were supported by substantial evidence. Craft, 854 So.2d at 511(¶ 5).
¶ 17. Thus, our purpose in reviewing the testimony quoted above is simply to show that given, among other things, the doctors’ testimony recited above (which constitutes but a small portion of the evidence considered by the Full Commission) we would be very hard pressed to reverse the decision of the circuit court in this case.
¶ 18. We find in the record substantial evidence to support the Full Commission’s finding that Levy did not sustain a com-pensable injury to her left upper extremity in the form of a ganglion cyst; therefore, we affirm the judgment of the circuit court on this issue.
II. DID THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION ERR IN FINDING THAT LEVY DID NOT SUSTAIN A COM-PENSABLE INJURY TO HER RIGHT AND LEFT UPPER EXTREMITIES IN THE FORM OF CARPAL TUNNEL SYNDROME?
¶ 19. Levy argues, again, that the findings of the Full Commission were not supported by substantial evidence, and that the Commission failed to give proper weight to the testimony of her treating physicians. Mississippi Uniforms argues that the findings of the Full Commission were supported by substantial evidence. Much of our discussion of the first issue above is equally applicable to this issue; however, there are additional elements to this second issue which we will address below.
STANDARD OF REVIEW
¶ 20. Our standard of review for this issue is the same, deferential standard of review that we applied to the first issue. Mullett, 856 So.2d at 616(¶ 7); Craft, 854 So.2d at 511(¶ 5).
DISCUSSION
¶ 21. Regarding Levy’s claim that she suffered carpal tunnel syndrome in her right wrist, we note in the record that no injuries to her right hand were complained of until thirteen months after her employment with Mississippi Uniforms *1266 ended, and she did not receive treatment for her right wrist until almost three years after her employment with Mississippi Uniforms ended (a carpal tunnel release on her right wrist was performed by Dr. Freeland on October 31, 1997). While we do find evidence in the record that Levy had carpal tunnel syndrome in her right wrist, this condition did not arise until well after her employment with Mississippi Uniforms had ended. Thus, Levy’s claim that she suffered a work related injury to her right wrist appears to be untenable, simply given the time frame involved.
¶ 22. Yet, Levy attempts to relate her right wrist ailments to the injury to her left wrist by arguing that the problems were caused by overuse of her right wrist necessitated by the allegedly work related injury to her left wrist. In support of this theory, however, Levy could only offer speculation.
¶ 23. For example, on this theory, Dr. Downer testified, “If one side hurts, we tend to use the other one more, and that might explain why she developed bilateral pain at a later time. That’s pure speculation.” Later, after Dr. Downer noted that Levy did not make any complaints about her right wrist until September of 1995, the following exchange occurred:
Q. [D]o you have an opinion as to any causal relationship or not with the right arm and the work that I’ve described?
A. Well, as I mentioned before, it would be pure — we have nothing objective or EMG wise or x-ray to prove that point....”
¶ 24. The word that Dr. Downer omits after “it would be pure” appears to be “speculation,” which would reference his earlier comment that this theory about the right arm injury was pure speculation. In any event, Dr. Downer clearly states that there is no objective evidence to support the “overuse” theory. But even if we accept this theory, after our discussion of issue one, the result in this case would not change. This is because Levy has still failed to demonstrate that the injury to her left wrist (which, under her theory, was the cause of the injury to her right wrist) was causally related to her work. Thus, even if the overuse of her right wrist led to the right wrist injury, there is still insufficient proof to show that the injury to the left wrist that allegedly prompted the overuse of the right wrist was caused by Levy’s work.
¶ 25. Further, there was medical testimony to show that the injury to Levy’s right wrist might not have been caused by her work. For example, Dr. Freeland, in his deposition, testified that Levy suffered from hypertension and obesity, both of which he named as “compounding factors” to her wrist problems. He also stated, “They [hypertension and obesity] are both known factors that can cause or contribute to carpal tunnel, specifically.” Dr. Free-land also testified, “But as for cause, we certainly can’t say whether it’s caused by one [work] or the other [hypertension and obesity], or a combination of these things. Combination is most probable.” While Dr. Freeland does speak of probability, he makes that statement only after this qualification: “we certainly can’t say whether it’s caused by one or the other.”
¶ 26. Therefore, we find in the record substantial evidence to support the Full Commission’s finding that Levy did not suffer a compensable injury to her right upper extremity in the form of carpal tunnel syndrome.
¶27. Regarding Levy’s claim that she suffered carpal tunnel syndrome in her left wrist, we note that nothing in the record indicates that she actually suffered this condition in her left wrist, at the times *1267 relevant to this case. The only tests for this particular condition revealed that, while there were indicators of carpal tunnel syndrome in her right wrist, her left wrist was normal and not in need of any treatment for carpal tunnel syndrome. In this regard, Dr. Freeland testified:
A. It doesn’t look as though — as far as I can tell, there was no objective evidence of a structural abnormality that is surgically treatable.
Q. On the left?
A. On the left.
¶28. Along these same lines, the following exchange also occurred in Dr. Free-land’s deposition:
Q. Okay. You saw no objective reasons, from the testing that was done in this case, for any impairment rating to the left hand, did you?
A. No, sir.
Q. And you saw no reason to impose restrictions for use of the left hand, did you?
A. No, sir.
¶29. Dr. Freeland also noted in his deposition that a test conducted by Dr. Leis at University Medical Center on August 3, 1995, showed carpal tunnel on the right wrist, but nothing on the left wrist. A medical report dictated by Dr. Geissler dated August 9, 1995, says the same: carpal tunnel on the right, normal on the left. Therefore, there does not appear to be anything in the record to support Levy’s claim that she suffered carpal tunnel syndrome in her left wrist; at the very least, there was certainly substantial evidence to support the Full Commission’s finding that Levy did not suffer a compensable injury to her left upper extremity in the form of carpal tunnel syndrome.
¶ 30. In conclusion, we find in the record substantial evidence to support the Full Commission’s finding that Levy did not sustain a compensable injury to her right and left upper extremities in the form of carpal tunnel syndrome.
¶ 31. Therefore, we affirm the judgment of the circuit court.
¶ 32. THE JUDGMENT OF THE CIRCUIT COURT OF HOLMES COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR.