CARLTON, J.,
 

 for the Court.
 

 ¶ 1. Vickie Clark appeals from the DeSo-to County Circuit Court’s order affirming the Mississippi Workers’ Compensation Commission’s (Commission) decision that: (1) Clark failed to prove that her carpal tunnel syndrome was caused by a work-related injury, and (2) Clark failed to meet her burden of proof that she was entitled to temporary total disability benefits or permanent disability benefits. Finding no error, we affirm.
 

 FACTS
 

 ¶ 2. On February 7, 2003, while hammering socket sets for her employer, Spherion Corporation (Employer), Clark felt a sharp pain through her right arm and shoulder that gradually went down through her right hand. Clark had hammered for approximately eight hours that day. Clark reported her injury to her employer. Clark had not had any pain in her right shoulder or arm before February 7. Clark testified that her employment was terminated on February 10, 2003, because of her injury. Clark filed a petition to controvert on June 10, 2003, alleging that she suffered injuries to her whole body, right shoulder, right arm, and right hand on or about February 7, 2003, while hammering socket sets for her employer. The Employer responded by filing an answer on June 23, 2003, admitting that the injury to Clark’s right arm and right shoulder was a work-related injury. The Employer disputed the extent of Clark’s injuries and denied any injury to Clark’s right hand.
 

 ¶ 3. Clark saw Dr. John Black at the emergency room at Baptist Memorial Hospital in DeSoto County, Mississippi, on February 9, 2003,
 
 [1]
 
 complaining of pain in her right shoulder. Dr. Black prescribed pain medication and instructed Clark to follow up with her primary-care physician. The records from the emergency room visit do not indicate that Clark ever complained of right-wrist pain.
 

 
 *776
 
 ¶ 4. Clark sought treatment from Dr. Bruce Randolph on May 13, 2003, complaining this time of right-arm and right-shoulder pain. At this visit, Clark complained of a knot in her right wrist, which Dr. Randolph initially diagnosed as a ganglion cyst. Dr. Randolph could not say for certain if Clark’s cyst was work related. Dr. Randolph instructed Clark to perform therapeutic exercises. He released her to work on modified duty on May 14, 2003, with restrictions limiting overhead work, repetitive movements, and climbing. He also instructed her to lift no more than ten pounds.
 

 ¶ 5. Clark returned to Dr. Randolph on May 23, 2003. Clark complained that she suffered continued pain in her right arm, including pain in her right thumb area which was aggravated by thumb movement. Dr. Randolph noted in his records that Clark had not returned to work since the accident and did not intend to return to work. Dr. Randolph diagnosed Clark’s wrist pain as mild tendinitis. Dr. Randolph kept Clark on modified duty, but he increased her lifting limit to twenty pounds.
 

 ¶ 6. Dr. Randolph saw Clark on June 11, 2003, and again on June 18, 2003. He finally diagnosed Clark with persistent right-shoulder tendinitis, with pain radiating to her right hand. Dr. Randolph referred Clark to Dr. A.H. Manugian, an orthopedic surgeon, for evaluation.
 

 ¶ 7. Clark finally saw Dr. Manugian on November 26, 2003, nearly nine months after her work injury. Dr. Manugian diagnosed Clark with rotator-cuff tendinitis, which had resolved, and intermittent par-esthesia of her right hand. He determined Clark to be at maximum medical improvement as far as her right-shoulder injury was concerned. Clark saw Dr. Manugian again in July 2004 and reported worsening symptoms indicating carpal tunnel syndrome. Dr. Manugian never restricted Clark from returning to work. Clark’s symptoms had continued to worsen, although she had not worked since February 2003.
 

 ¶ 8. Dr. Manugian testified in a deposition that if the injury on February 7, 2003, caused Clark’s carpal tunnel syndrome, he would have expected her to have experienced symptoms immediately. Further, Dr. Manugian testified that it is unusual for a single traumatic event to cause carpal tunnel syndrome. Dr. Manugian could not say to a reasonable degree of medical probability that the work injury caused Clark’s carpal tunnel syndrome.
 

 ¶ 9. Neither Dr. Manugian nor Dr. Randolph ever suggested to Clark that she should not work. The Employer offered Clark a light-duty position at their offices in Memphis, Tennessee, which Clark refused because she felt uncomfortable driving in Memphis. Clark testified that she also refused the position because she had never been trained to work in an office. The Commission noted that the offices of Dr. Manugian and Dr. Bass were located in Memphis.
 

 ¶ 10. The parties had a hearing on the merits on August 17, 2006. At the time of the hearing, Clark worked for Byrd Cleaning Service making $9.00 per hour. She began working for the cleaning service in April 2005. Clark’s duties included cleaning bathrooms, mopping, and washing bathtubs. Clark testified that she does not wear a wrist splint or brace while working for the cleaning service.
 

 ¶ 11. On January 18, 2007, the administrative law judge entered her order finding Clark entitled to temporary total disability benefits in the amount of $173.67 per week. The Employer appealed to the Commission. On November 8, 2007, the Commission entered an order finding that
 
 *777
 
 Clark had failed to prove that her carpal tunnel syndrome was related to her work. Further, the Commission found that Clark had failed to prove that she was entitled to temporary total disability benefits or permanent disability benefits for her right-shoulder injury. The Commission affirmed the award of compensation for medical treatment related to Clark’s right-shoulder injury.
 

 ¶ 12. Clark appealed the Commission’s decision to the Circuit Court of DeSoto County. The circuit court affirmed the Commission’s decision. Clark now appeals the judgment of the circuit court and is now before this Court. On appeal, Clark argues that the circuit court’s judgment affirming the Commission’s decision is not based on substantial evidence and should be reversed. We find no error and affirm the circuit court’s judgment.
 

 STANDARD OF REVIEW
 

 ¶ 13. This Court’s standard of review in a workers’ compensation appeal is limited to determining whether the Commission’s decision is supported by substantial evidence.
 
 Casino Magic v. Nelson,
 
 958 So.2d 224, 228(¶ 13) (Miss.Ct.App.2007) (citing
 
 Westmoreland v. Landmark Furniture, Inc.,
 
 752 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999)). “The Commission sits as the ultimate finder of facts; its findings are subject to normal, deferential standards upon review.”
 
 Id.
 
 (citing
 
 Natchez Equip. Co. v. Gibbs,
 
 623 So.2d 270, 273 (Miss.1993)). Because our review is limited, this Court “will only reverse the Commission’s rulings where findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.”
 
 Id.
 
 (citing
 
 Westmoreland,
 
 752 So.2d at 448(¶ 8)). We maintain this deferential standard even when we would have been persuaded to rule otherwise if we had been the fact-finder.
 
 Vance v. Twin River Homes, Inc.,
 
 641 So.2d 1176, 1180 (Miss.1994) (quoting
 
 Fought v. Stuart C. Irby Co.,
 
 523 So.2d 314, 317 (Miss.1988)). Though we defer to the Commission’s findings of fact, “[w]e review the Commission’s application of the law de novo.”
 
 Univ. of Miss. Med. Ctr. v. Smith,
 
 909 So.2d 1209, 1218(¶ 30) (Miss.Ct.App.2005) (citing
 
 ABC Mfg. v. Doyle,
 
 749 So.2d 43, 45(¶ 10) (Miss.1999)).
 

 DISCUSSION
 

 ¶ 14. The Commission reversed the administrative law judge’s finding that Clark was entitled to total disability benefits for her right-shoulder injury as well as her holding that Clark’s carpal tunnel syndrome was caused by her work injury. This Court must determine whether substantial evidence in the record supports the Commission’s findings.
 
 Casino Magic,
 
 958 So.2d at 228(¶ 13) (citing
 
 Westmoreland,
 
 752 So.2d at 447(¶ 7)). Therefore, we have separated Clark’s argument into two issues: (1) whether the Commission erred in finding that Clark failed to prove that her carpal tunnel syndrome was related to her work, and (2) whether Clark failed to prove her entitlement to temporary total disability benefits for her right-shoulder injury.
 

 I. Whether Clark failed to prove that her carpal tunnel syndrome was work related.
 

 ¶ 15. Under workers’ compensation law, the claimant has the burden of proof in showing the causal connection between the claimant’s employment and the resulting disabling condition.
 
 Hedge v. Leggett & Platt, Inc.,
 
 641 So.2d 9, 13 (Miss.1994). The claimant must prove by a preponderance of the evidence each element of her case.
 
 Tex. Gas Transmission Corp. v. Dabney,
 
 919 So.2d 1079, 1085(21) (Miss.Ct.App.2005).
 

 
 *778
 
 ¶ 16. “In all but the simple and routine cases ... it is necessary to establish medical causation by expert testimony.”
 
 Cole v. Superior Coach Corp.,
 
 234 Miss. 287, 291, 106 So.2d 71, 72 (1958). A “claim of disability must be supported by medical findings.”
 
 Howard Indus. v. Robinson,
 
 846 So.2d 245, 252(17) (Miss.Ct.App.2002) (citing Miss.Code Ann. § 71 — 3—3(i) (Supp.2001)). “[M]edical evidence must prove not only the existence of a disability but also its causal connection to employment.”
 
 Id.
 
 at 259(¶ 49) (citation omitted).
 

 ¶ 17. When asked whether he could say with a reasonable degree of medical probability that Clark’s work injury caused the carpal tunnel symptoms in her right hand, Dr. Manugian answered that he could not. He testified that, in his experience, it would be unusual for a single traumatic event to cause carpal tunnel syndrome. Further, Dr. Manugian testified that it would be even more unusual for carpal tunnel syndrome to be caused by a single traumatic event when the patient did not complain of the carpal tunnel symptoms very soon after the event. Dr. Manugian gave the following testimony in response to questions from the Employer:
 

 Q: Do you have an estimate for a period of time that you would have expected her wrist to begin hurting and her having the symptoms [if] the hammering had been the producing cause of these symptoms?
 

 A: It is hard' — that is a difficult question to answer because individuals are variable. Some people will begin to have, if they have the tendency to get carpal tunnel problems, it could happen within a few days of starting a job. Some people take a lot longer to develop symptoms, and some people can do all of this with never having symptoms. So, I can’t answer that any better than that.
 

 Q: Well, I guess the only injury that, or incident that, she reported was a single incident where she was hammering a socket set, is that accurate?
 

 A: According to records, that seems to be the case.
 

 Q: So, if we are not talking about repetitive use but if we are talking about a single incident, when would you typically expect the symptoms to appear in [sic] an acute or traumatic injury produce the symptoms?
 

 A: I think if you had a traumatic carpal tunnel, the symptoms would start immediately.
 

 Q: And would it be fair to say that the more remote or distant in time from that acute injury or incident that the carpal tunnel appeared, it would be less likely to be caused by that one incident?
 

 A: Yes, I would think so.
 

 ¶ 18. The Commission found that Clark failed to prove a causal connection between her carpal tunnel syndrome and her work injury on February 7, 2003. Clark’s physician, Dr. Manugian, was unwilling to testify that her work injury caused her carpal tunnel symptoms, or even that it was
 
 likely
 
 that the injury caused her symptoms. Clark failed to meet her burden of proof to show a causal connection between her employment and the carpal tunnel syndrome.
 
 See Hedge,
 
 641 So.2d at 12-13. Therefore, we find no error in the Commission’s decision to deny compensation for Clark’s carpal tunnel syndrome. This issue is without merit.
 

 II. Whether Clark failed to meet her burden of proof that she is entitled to temporary total disability benefits.
 

 ¶ 19. The Mississippi Workers’ Compensation Act (the Act) defines dis
 
 *779
 
 ability as “incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment....” Miss. Code Ann. § 71-3-3(i) (Rev.2000). Further, that “incapacity and the extent thereof must be supported by medical findings.”
 
 Id.
 

 ¶ 20. Clark’s employer offered her light-duty work in their offices in Memphis, Tennessee. In a letter dated February 20, 2003, Stacy Kail, a client-service supervisor for the Employer, offered Clark office work at a wage of $7.50 per hour, working a forty-hour week. Kail’s letter to Clark stated the following:
 

 Dear Vickie:
 

 We have been notified that your physician has released you to return to work. Your employer and our Nurse Case Manager have used the guidelines provided by your physician to identify an appropriate temporary modified duty work assignment for you. Your physician has agreed that the work assignment listed below meets those guidelines and has released you to work accordingly-
 

 You are scheduled to return to work at Spherion, 4945 American Way, Ste. 5. Your assignments start on 2/21/03 at 8:00 a.m. You are scheduled to work 8 hours per day, 5 days per week at this assignment. You will report to Marlon. The job pays $7.50 per hour.
 

 You[r] modified'job duties will consist of the following:
 

 No lifting arms over the head
 

 No lifting over 10 lbs.
 

 If necessary, we will work with you and your physician to modify the job duties to meet any limitations as you work towards a full-duty release. We will accommodate your medical and/or physical therapy appointments.
 

 I spoke to you today, 2/20/03 about this assignment and are [sic] happy you have accepted this assignment. Per our conversation, I look forward to seeing you [on] 2/21/03.
 

 [signature]
 

 Note: Failure to return to work in a temporary modified duty assignment approved by your physician may results [sic] in suspension of your Workers’ Compensation benefits.
 

 ¶ 21. Both Clark and Kail testified at the hearing that Clark failed to return to work. Clark testified that she did not accept the offer because she does not drive in Memphis. Clark testified that she was unaccustomed to driving in Memphis. Further, she testified that, she had no training to work in an office. Kail testified, however, that the Employer would have provided any necessary training for Clark. Further, Clark testified that if someone had shown her how to drive from her home in Byhalia, Mississippi to the Employer’s office in Memphis, she would have been able to drive there. Clark never requested training for the office position or expressed any concern about driving in Memphis.
 

 ¶ 22. At the time of the hearing, Clark was employed by Byrd Cleaning Services and earned approximately $9.00 per hour, though she testified that she usually only worked eighteen to twenty-five hours per week.
 

 ¶ 23. Neither Dr. Randolph nor Dr. Manugian ever instructed Clark that she could not work. Rather, Clark was released with minimal restrictions, which included limitations on repetitive activity and on lifting in excess of ten pounds. In a letter to Dr. Randolph on November 26, 2003, Dr. Manugian stated: “I am enclosing a copy of the office dictation for your records. I certainly agree with your recommendation of an EMG which apparently
 
 *780
 
 has not been done and I will keep you informed as to the findings.
 
 In the interim I see no reason why [Clark] should not continue to work.”
 
 Dr. Randolph had released Clark to return to work at modified duty on May 14, 2003. Neither Dr. Manu-gian nor Dr. Randolph assigned an impairment rating for Clark.
 

 ¶ 24. The Commission determined that Clark failed to put forth sufficient proof to support an award for temporary total disability benefits for the injury to her right shoulder. This Court finds the Commission’s decision on this issue to be supported by substantial evidence.
 

 CONCLUSION
 

 ¶ 25. The Commission found that Clark failed to prove that her carpal tunnel syndrome was work related. Further, the Commission found that Clark failed to prove her entitlement to temporary total disability benefits. This Court is bound by the Commission’s findings of fact because they are supported by substantial evidence in the record.
 
 See Casino Magic,
 
 958 So.2d at 228(¶ 13) (citing
 
 Westmoreland,
 
 752 So.2d at 447(¶ 7)). Therefore, we find no error and affirm.
 

 ¶ 26. THE JUDGMENT OF THE DE-SOTO COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, AND ROBERTS, JJ„ CONCUR. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 . The record reflects that Clark also saw a chiropractor, Dr. Bass, in Memphis, Tennessee. The record does not show when Clark visited Dr. Bass or what findings he made regarding her condition. Dr. Bass’s full name is not provided in the record.