GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Willie L. Brown filed for workers’ compensation benefits for an injury to his right elbow and for bilateral carpal tunnel syndrome in his right arm and hand. The Mississippi Workers’ Compensation Commission found that Brown failed to show that his injuries were work-related; thus, Brown was denied workers’ compensation benefits. The Commission’s decision was upheld by the Circuit Court of Tunica County. Brown appeals to this Court claiming that the Commission’s decision was not based on substantial evidence, was arbitrary and capricious, and was based on an erroneous application of the law. We find no error and affirm.
 

 FACTS
 

 ¶ 2. On December 10, 2000, Brown began work as a slot cashier at Horseshoe Casino and Hotel (“Horseshoe Casino”). He worked in the cage on the casino floor making change for guests and operating the coin sorter. Once the coins were sorted, he was required to unload bags of coins weighing approximately fifty to eighty pounds each. Brown described the work as fast-paced, involving repetitive movements of his right arm and wrist. Brown’s duties also included refilling the slot machines by carrying bags of coins to the slot machine and pouring the coins into the back of the slot machine.
 

 ¶ 3. Brown filed two workers’ compensation claims. One alleged a June 1, 2001, work injury to his right elbow. The other alleged bilateral carpal tunnel syndrome as a result of his repetitive lifting and carrying of the coin bags. A hearing was held before an administrative law judge (“ALJ”) to determine whether Brown’s claims were related to his work at Horseshoe Casino. The ALJ found that Brown met his burden of proof regarding the June 1, 2001, injury to his right elbow. Brown was awarded temporary total disability and necessary medical payments relating to this injury. However, the ALJ found that Brown failed to prove that his bilateral carpal tunnel syndrome was work-related.
 

 ¶ 4. Both parties requested review of the ALJ’s order by the Commission. After hearing oral argument, the Commission held that Brown failed to meet his burden of proof on both claims and denied all benefits. The Commission’s decision was thereafter affirmed by the circuit court. Brown appeals to this Court claiming that the Commission’s decision is not based on substantial evidence, is arbitrary and capricious, and is based on an erroneous application of the law.
 

 STANDARD OF REVIEW
 

 ¶ 5. This Court’s scope of review in workers’ compensation cases is limited
 
 *322
 
 to a determination of whether the decision of the Commission is supported by substantial evidence.
 
 Westmoreland v. Landmark Furniture, Inc., 752
 
 So.2d 444, 447(¶ 7) (Miss.Ct.App.1999). The Commission sits as the ultimate finder of fact; its findings are “subject to normal, deferential standards upon review.”
 
 Natchez Equip. Co. v. Gibbs,
 
 623 So.2d 270, 273 (Miss.1993). We will only reverse the Commission’s ruling when its findings of fact are unsupported by substantial evidence, matters of law are clearly erroneous, or the decision was arbitrary and capricious.
 
 Hale v. Ruleville Health Care Ctr.,
 
 687 So.2d 1221, 1224-25 (Miss.1997);
 
 Westmoreland,
 
 752 So.2d at 448(¶ 8).
 

 ANALYSIS
 

 I. Whether this appeal should be dismissed due to Broom’s failure to timely pursue the appeal.
 

 ¶ 6. Before we reach the merits of this case, we note that Horseshoe Casino moved to dismiss this appeal based on Brown’s failure to pursue his appeal until more than a year after filing his notice of appeal. The circuit court affirmed the Commission’s denial of benefits on January 5, 2007. Brown timely filed his notice of appeal to this Court on January 11, 2007. Although Brown was contacted by the Commission and counsel opposite, he failed to file his designation of record until thirteen months after his notice of appeal. Brown also failed to file his certificate of compliance or pay his filing fee and appeal costs to the circuit court clerk.
 

 ¶ 7. On February 21, 2008, Horseshoe Casino filed a motion to dismiss in the circuit court. The circuit court did not rule on the motion before the record was sent to the supreme court for this appeal. On July 7, 2008, the supreme court clerk issued Brown a deficiency notice pursuant to Rule 2(a)(2) of the Mississippi Rules of Appellate Procedure which states, in part:
 

 An appeal may be dismissed upon motion of a party or on motion of the appropriate appellate court (i) when the court determines that there is an obvious failure to prosecute an appeal; or (ii) when a party fails to comply substantially with these rules. When either court, on its own motion or on motion of a party, determines that dismissal may be warranted under this Rule 2(a)(2), the clerk of the Supreme Court shall give written notice to the party in default, apprising the party of the nature of the deficiency. If the party in default fails to correct the deficiency within fourteen (14) days after notification, the appeal shall be dismissed by the clerk of the Supreme Court. The attorney for the party in default has the burden to correct promptly any deficiency or to see that the default is corrected by the appropriate official.
 

 ¶ 8. The deficiency notice instructed Brown that he had fourteen days to correct the deficiencies in his appeal or the appeal would be dismissed. Brown complied with the letter by paying his filing fee and appeal costs to the circuit court clerk and by filing his designation of record and certificate of compliance within fourteen days.
 

 ¶ 9. The supreme court decided a similar case in
 
 Van Meter v. Alford,
 
 774 So.2d 430 (Miss.2000). Van Meter timely filed its notice of appeal but “was delinquent in filing a designation of record, an estimation of costs, and a Rule 11(b)(1) certificate of compliance.”
 
 Id.
 
 at 432(¶ 6). Each of these requirements for an appeal are to be filed within seven days of the notice of appeal.
 
 Id.
 
 (citing M.R.A.P. 10(b)(1) and 11(b)(1)). However, Van Meter was never given official notice from the clerk of the
 
 *323
 
 deficiencies of his appeal as required under Rule 2(a)(2). let at (V 3).
 

 ¶ 10. The supreme court held that due process required that Van Meter receive an official notice from the clerk.
 
 Id.
 
 at (¶ 4). Alford’s motion to dismiss was not sufficient notice of the deficiencies of the appeal because “[e]ven where a party has moved to dismiss, the plain language of the rule requires a notice from the clerk of the deficiency and a fourteen day opportunity to cure the deficiency.”
 
 Id.
 

 ¶ 11. Here, Horseshoe Casino’s motion to dismiss was filed months before Brown was given notice from the supreme court clerk. When Brown eventually received an official notice from the supreme court clerk, he immediately cured the deficiencies within the fourteen day time period. According to
 
 Van Meter,
 
 due process required that Brown receive this official notice before his appeal could be dismissed. Because he cured the deficiencies in the time allowed under Rule 2(a)(2), we cannot now dismiss Brown’s appeal. Thus, we continue to the merits of the appeal.
 

 II. Whether the Commission’s decision was not based on substantial evidence, was arbitrary and capricious, or was based on an erroneous application of the law.
 

 ¶ 12. Brown argues that the Commission erred in denying both his claim for the injury to his right elbow and his claim for bilateral carpal tunnel syndrome. Horseshoe Casino claims that substantial evidence exists to support the Commission’s decision. We address each claim separately.
 

 A. Right Elbow Injury
 

 ¶ 13. Brown testified that he injured his right elbow while filling a slot machine on June 1, 2001. He and another coworker were preparing to fill the slot machine when a guest asked Brown for change. Brown’s coworker thought that Brown was paying attention to the slot machine, and the coworker opened the door on the back of the machine. While Brown was helping the guest, the door to the slot machine struck Brown on the back of his right elbow. He stated that it felt like hitting his funny bone. He experienced a sharp pain for approximately fifteen minutes.
 

 ¶ 14. Brown continued to work that evening, and he did not report this injury to anyone at Horseshoe Casino. In September 2001, Brown complained to Regina Barnes in the human resources department that his right arm and hand were interfering with the duties of his employment; however, Brown failed to mention any work-related injury. In December 2001, Brown reported to his supervisor, Patrice Rush, that he had right arm pain and headaches. Again, he failed to link his medical problems to his alleged work injury.
 

 ¶ 15. Brown first sought medical treatment on December 28, 2001, from Dr. William Drewry. Brown complained of depression, headaches, and decreased strength in his right hand. Dr. Drewry ordered an electromyography which revealed ulnar neuropathy cubital tunnel syndrome in Brown’s right arm.
 

 ¶ 16. Brown was referred to Dr. Gary Kellett, a specialist, who diagnosed Brown with severe ulnar neuropathy. Dr. Kellett performed surgery on Brown’s right elbow. Brown was sent to physical therapy and then released with a permanent thirty-pound weight restriction for his right arm. Dr. Kellett found that Brown reached maximum medical improvement on June 28, 2002.
 

 ¶ 17. It was not until Brown began treatment with Dr. Kellett on February 21, 2002, that Brown reported the alleged work-related injury to his elbow. Dr. Kel-
 
 *324
 
 lett asked Brown whether he had sustained any blunt trauma to his elbow. Brown testified that it was at that moment that he made a connection between the pain in his arm and the June 1, 2001, injury to his elbow.
 

 ¶ 18. When asked if he had any trauma to his elbow, Brown told Dr. Kellett about the injury with the slot machine door. Thus, Dr. Kellett concluded in his medical report that “since [Brown] had the onset [of the pain in his arm] at the time of the injury to his elbow on the door, that this was the cause of [Brown’s] injury.”
 

 ¶ 19. The ALJ found that Brown’s testimony about his elbow injury was uncontra-dicted, reasonable, and credible. Further, the ALJ concluded that Brown immediately reported the injury to his elbow once Dr. Kellett connected the elbow injury to the pain he was experiencing in his right arm and hand. The ALJ awarded Brown temporary total disability benefits from December 28, 2001 until June 28, 2002, and all reasonable and necessary medical services related to his elbow injury.
 

 ¶ 20. However, the Commission overturned the ALJ’s ruling as to Brown’s elbow injury. The Commission held that Brown did not meet his burden of proving that the elbow injury was work-related. Of significance to its ruling, the Commission found that Brown twice reported problems with his right arm and hand to his supervisors at Horseshoe Casino; however, Brown never mentioned that he suffered an injury to that arm at work. Further, the Commission noted that Dr. Kellett’s finding of causation was solely based on Brown’s report that he injured his elbow at work.
 

 ¶21. Most significantly, the Commission found the Brown’s testimony as a whole was untrustworthy. The Commission’s ruling stated that:
 

 the tenor of the claimant’s entire testimony is simply not trustworthy. A reading of his testimony at the hearing leaves the Commission with the impression that the claimant is evasive in manner and leads us to conclude that this claimant conveniently recalled an injury when it served his needs. The credibility of the claimant is always crucial to his case. While the [ALJ] evidently found the claimant’s testimony credible in some aspects — at least sufficient to support a recovery for his right elbow claim, we cannot agree. To us, the entirety of the testimony compels us to question the claimant’s veracity on all issues. As the crucible of his claim, we find the claimant lacking.
 

 ¶ 22. Our review of the Commission’s holding is quite limited. The Commission’s findings “are binding on this Court so long as they are supported by substantial evidence” even though the evidence might “convince this Court otherwise, were we the fact-finder.”
 
 Hedge v. Leggett & Platt, Inc.,
 
 641 So.2d 9, 12 (Miss.1994) (quoting
 
 Mitchell Buick Pontiac & Equip. Co. v. Cash,
 
 592 So.2d 978, 980 (Miss.1991)) (citations omitted).
 

 ¶ 23. Brown failed to report his alleged work-related injury until more than eight months later. During this time, he reported to Horseshoe supervisors that problems with his right arm and hand were interfering with his work. However, he never mentioned the injury to his elbow. He also failed to disclose the injury to Dr. Drewry. In fact, there is no mention of this injury until Dr. Kellett directly asked him whether he had suffered blunt trauma to the elbow.
 

 ¶ 24. Initially, Brown could not name the coworker who witnessed his injury. Nor could he remember whether the coworker was male or female. At a later time, Brown claimed to remember that the
 
 *325
 
 coworker’s name was Trudy; however, Brown did not obtain her testimony to corroborate his claim.
 

 ¶ 25. At times, Brown gave inconsistent reports of the onset of his injury. When Brown saw Dr. Drewry on December 28, 2001, he stated that the symptoms in his right arm had occurred for about a year. That statement is inconsistent with his date of injury on June 1, 2001. There was also testimony at the hearing that Brown suffered a shoulder injury in 1997 or 1998; however, Brown did not mention this injury to any of his doctors.
 

 ¶ 26. Furthermore, Dr. Kellett did not give an objective opinion to a reasonable degree of medical probability as to the causation of Brown’s diagnosis. Dr. Kel-lett based his finding of causation solely on Brown’s delayed report of a work injury to his elbow. Dr. Kellett merely concluded that Brown’s condition was consistent with Brown’s story of the injury.
 

 ¶ 27. Brown’s testimony was crucial to his claim, and the Commission, as fact-finder in this case, found Brown to be wholly untrustworthy. We find that there is substantial evidence to uphold the Commission’s decision as to Brown’s elbow injury. As such, this issue is without merit.
 

 B. Bilateral Carpal Tunnel Syndrome
 

 ¶ 28. Brown’s claim for workers’ compensation benefits related to his bilateral carpal tunnel syndrome was based on his repetitive lifting, straining, and carrying of the coin bags. The ALJ concluded that Brown failed to meet his burden of proving that his carpal tunnel syndrome was work-related because there was insufficient evidence to show a causal connection between the injury and his work activities. The Commission agreed and affirmed the findings of the ALJ.
 

 ¶ 29. Brown offered no medical testimony to relate his bilateral carpal tunnel syndrome to his work at Horseshoe Casino. His argument is that common sense would establish a connection between the injury and the repetitive motion of his work. However, that argument alone is not enough to overturn the decision of the Commission. Because Brown offered no proof of a causal connection, we find that the Commission’s decision to deny workers’ compensation benefits for Brown’s bilateral carpal tunnel syndrome is based on substantial evidence. Accordingly, this issue is without merit.
 

 ¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF TUNICA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.