384 So.2d 601 (1980)
PONTOTOC WIRE PRODUCTS COMPANY
v.
Billy Ray FERGUSON.
No. 51875.
Supreme Court of Mississippi.
May 21, 1980.
*602 Daniel, Coker, Horton, Bell & Dukes, Robert S. Addison, Jackson, for appellant.
John D. Sibley, Okolona, for appellee.
Before PATTERSON, C.J., and SUGG and LEE, JJ.
PATTERSON, Chief Justice, for the Court.
An administrative law judge, followed by the three-member Mississippi Workmen's Compensation Commission, and the Circuit Court of Pontotoc County, found that Billy Ray Ferguson developed a work-related respiratory ailment resulting in permanent partial disability. Ferguson's employer, the Pontotoc Wire Products Company, appeals the award of the three forums below, contending that no substantial evidence in the record supports a finding of impaired earning capacity "in the same or other employment" within the meaning of Mississippi Code Annotated section 71-3-3(i) (1972). Pontotoc argues that Ferguson failed to make out a prima facie case of disability by presenting insufficient evidence of reasonable efforts to obtain other employment. We affirm.
The claimant is a 39-year-old married male with two dependent children. Unemployed since mid-1976, he worked the ten preceding years for the Pontotoc Wire Products Company, ultimately securing a supervisory position with responsibility over twenty-five to thirty plant workers. He has only a high school education. Before going to work for the Pontotoc Wire Products Company, he worked in a furniture manufactory in Houston, Mississippi. His work experience includes a stint as an assembly-line man for a tractor company in Illinois as well as a furniture inspector position at Dean Industries and sales work for Bingham Donaldson in Pontotoc.
The medical experts agreed that Ferguson's respiratory ailment resulted from inhalation of noxious fumes in the Pontotoc plant. Dr. Potter, a treating physician, testified that he placed no restrictions on Ferguson's activity other than removing him from the industrial environment. He did not advise Ferguson to quit working altogether. Dr. Myers indicated that Ferguson's condition permitted him to perform light and sedentary tasks requiring little exertion. A practical description of Ferguson's medical condition would be shortness of breath, Dr. Potter having testified that Ferguson had the lung capacity of an 80-year-old man, preventing heavy manual labor with or without exposure to fumes, but permitting office work without exposure to fumes. Relevant portions of the record relating to Ferguson's attempts to find "other" substantial gainful employment which would not exacerbate his ailment follow:

*603 Q. Now, since you were terminated have you made any effort to try to obtain gainful employment?
* * * * * *
A. Yes, sir. I filled out an application in Pontotoc here at Ram Golf, and also applied for a job with the State of Mississippi.
Q. Were you successful in obtaining employment at either one of these places?
A. No, sir.
* * * * * *
Q. You filed an application with the State. What department?
A. I didn't file an application. I was talking to Senator and Representative from this county and this area, and I was trying to get
Q. What job were you attempting to get?
A. At this time this was meat inspection.
* * * * * *
Q. Did he [Mr. Stephen of Pontotoc Wire] offer you any other job?
A. Yes, sir, there was another place mentioned.
Q. Was that in Memphis?
A. Yes, sir, a warehouse. I understand it was a warehouse, but no money was mentioned.
Q. Did you inquire as to the money, or the work, or have you explored the possibility of that job?
A. I did not.
Q. Why not?
A. Well, it wasn't really explained to me like it was at Jena, and I didn't feel like in a warehouse that it would be the same money, even if I was able to work in the plant.
* * * * * *
Q. And you had been with the company ten years.
A. Yes, sir.
Q. And had Mr. Stephen not shown an inclination to help you get a transfer to a place where you could continue with the company?
A. Yes, sir, he did.
Q. But you didn't explore the possibility of the Memphis position at all.
A. No, sir.
Q... . Mr. Ferguson, do you recall having gotten a letter from Mr. Stephen after you told him that you would not be interested in working at Jena?
A. Yes, sir, I remember getting some kind of a letter.
Q. I show you a copy of a letter. Do you recall having received that letter?
A. Yes, sir.
* * * * * *
Q... . Now, following receipt of this letter, Mr. Ferguson, did you, as a matter of fact, avail yourself of Mr. Stephen's offer to be of assistance to you in locating employment?
A. No, sir.
The question we must now decide is whether there exist in the locality jobs suited to Ferguson's condition in light of his age, education, and work experience. If a claimant makes a prima facie showing of reasonable efforts indicating there are not suitable jobs, the burden then shifts to the employer or insurer to show otherwise. Thompson v. Wells-Lamont Corp., 362 So.2d 638 (Miss. 1978). Keeping foremost the principle that our Workmen's Compensation Law should be construed generously to advance its underlying remedial aims, Speed Mechanical, Inc. v. Taylor, 342 So.2d 317 (Miss. 1977), we uphold the findings of the three forums below that Ferguson made a prima facie showing of reasonable efforts which the insurer failed to rebut in any degree through evidence suggesting the availability of suitable employment in the locality.
In reaching this decision we consider four cases construing the provision of the Workmen's Compensation law defining "disability" as "incapacity ... to earn the wages ... in the same or other employment" (emphasis supplied): Sardis Luggage Co. v. Wilson, 374 So.2d 826 (Miss. 1979); Thompson v. Wells-Lamont Corp., *604 supra; Compere's Nursing Home v. Biddy, 243 So.2d 412 (Miss. 1971); and Coulter v. Harvey, 190 So.2d 894 (Miss. 1966). The factual details of each of these must be examined, because "we cannot ... delineate any hard and fast rule as to how many or exactly what type efforts a claimant must make in every case in order to establish `disability' within the purview of § 71-3-3(i)." 362 So.2d at 641.
This Court in Coulter denied workmen's compensation benefits to an illiterate laborer nearly seventy years of age because the laborer produced no evidence whatsoever indicating that he had attempted to find other employment when a work-related disability beset him. In Compere's Nursing Home, we reversed a finding of disability on a record showing that the claimant, a nurse's aide suffering from a work-related vertebral problem preventing her from lifting, stated she had applied for only one position, that having been as a nurse's aide. Noting that this was not "other employment," we held the claimant failed to make out a prima facie case of disability.
The claimant in Thompson v. Wells-Lamont Corp. did a great deal more, and was rewarded with a finding of disability by this Court on appeal. There, substantial evidence supported the findings that the claimant:
1. Went into a garment factory and immediately experienced allergic reaction (burning of her eyes, nose, and throat.)
2. Sought training for a secretarial job under a government sponsored program but was turned down.
3. Sought assistance of the State Employment Commission office, which referred her to a school for a job as a teacher's aide.
4. Applied for a job at the Webster County Library.
5. Sought aid of the State Employment Commission office in order to find a job, and her application there is still on file.
Finally, in Sardis Luggage Co., this Court, reaffirming its position that the "claimant must also prove that she made reasonable efforts to obtain employment in another or different trade after the disability subsided," reversed an award of permanent partial disability, stating "there is nothing in the record that even alludes to the appellee seeking other employment after her alleged disability." 374 So.2d at 828.
Certainly Ferguson introduced less evidence relating to his efforts to find substitute employment than did the claimant in Thompson v. Wells-Lamont Corp., supra. But clearly he presented more evidence on this issue than did the claimant in Sardis Luggage Co., supra.
When we consider Ferguson's trip to Jena, Louisiana, seeking suitable employment, his application to Ram Golf, his effort to obtain a position as a state meat inspector, as well as his age, education, work experience, and extent of physical impairment, we are impelled to conclude that he established a prima facie case of disability. The employer could readily have rebutted the prima facie case with evidence from such sources as employment agencies clearly showing the local accessibility of substantial gainful employment suited to Ferguson's unfortunate medical condition, had such evidence been available. But because the employer failed to present such evidence, we can only conclude none was available. It follows that the employer failed to rebut Ferguson's prima facie case of disability.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.