BRIDGES, C.J.,
for the Court:
¶ 1. William Craddock perfected this appeal from the Lafayette County Circuit Court affirming the Mississippi Workers’ Compensation Commission finding that Craddock suffered no permanent disability from his on-the-job injury at Whirlpool Corporation. Finding substantial evidence to support the Commission’s decision, we affirm.
FACTS
¶ 2. Craddock, a fifty-year-old white male, was employed by Whirlpool on August 15, 1993, as a dipper in the porcelain department. His job consisted of reaching overhead to a conveyor belt approximately seven feet above the ground and bringing down parts weighing about two pounds, dipping the parts in porcelain solution, and returning the parts to the conveyor belt. Craddock worked the afternoon shift. While performing these duties at approximately 5:00 p.m. on August 20,1993, Crad-dock felt a tightness in his back, a burning sensation, and then a pop with shooting pain up underneath his right shoulder blade.
¶ 3. According to Craddock, he notified his supervisor, Aundra Jones, of his injury. Craddock was accompanied to the first-aid room where ice was placed on his back for approximately an hour. Craddock then returned to work until about 8:00 p.m. when he lost all motion on his left side. Again Craddock reported to Jones, and Craddock was taken to the emergency room of the hospital.
¶ 4. While at the hospital, an x-ray was taken of Craddock’s back, and the doctor on duty prescribed a muscle relaxer and a shot for pain. Craddock was instructed to see Dr. William Spencer the following Monday.
¶ 5. After examining Craddock, Dr. Spencer prescribed Craddock medication, released Craddock to return to light duty work, and instructed him to come in every day for the remainder of the week for testing on his back.
¶ 6. Craddock returned to Whirlpool for light duty and was placed on a machine called a flow coater which required overhead lifting of frames from a conveyor belt and the occasional use of a long bar to straighten any twisted frame on the belt. The job was described as light duty or one of minimal movement and labor. However, the movement of reaching overhead caused Craddock pain. Craddock notified John Roberts, the safety coordinator, and Jones that he was unable to perform the job. According to Craddock, Roberts told him that if he could not handle the flow coater position which was the lightest position available, he should see Dr. Spencer and Craddock would be placed on medical leave.
¶ 7. Dr. Spencer referred Craddock to Dr. Wayne Terry Lamar, an orthopedic surgeon, on August 31, 1993. Dr. Lamar testified Craddock had a painful catch in his back and an acute muscle spasm. Dr. Lamar conducted a physical examination of Craddock. A lumbar spine x-ray showed Craddock had some hypertrophic changes at the lower dorsal spine between T12 and LI, changes at the interspace above T9-T10 and T11-T12 (which Dr. Lamar testified were unrelated to Crad-dock’s injury on August 20), some disk space narrowing, and anterior osteophyte formation. Dr. Lamar treated Craddock with physical therapy modalities and work reconditioning with a regimen of anti-in-flammatories and muscle relaxants. On September 13, Craddock complained that the B200 machine used in the rehabilitation process hurt his back. According to Dr. Lamar, Craddock’s complaints of pain seemed disproportionate to Dr. Lamar’s physical findings, and Dr. Lamar discerned a functional component. Dr. Lamar diagnosed Craddock as suffering from a thoracolumbar strain. Dr. Lamar testified that Craddock did not suffer any med- *402 ieal impairment of a permanent nature. Dr. Lamar referred Craddock to Dr. Thomas L. Windham for a neurological evaluation.
¶ 8. Dr. Windham first examined Crad-dock on September 14, 1993. Dr. Wind-ham testified he found Craddock’s condition to be unremarkable and noted that Craddock had good posture and good gait. He localized Craddock’s pain to about the eleventh thoracic vertebra on the right side. Dr. Windham found Craddock’s range of motion of the back was normal, Craddock had no pain on straight leg raising or hip motion and his neurological, reflex, and motor exams were all normal. An MRI scan was normal.
¶ 9. Dr. Windham suggested Craddock obtain a work evaluation and a functional capacity evaluation. The functional capacity evaluation test administered by Kelly Chaplin, a physical therapist at The Rehab Group, demonstrated Craddock was able to return to full duty without any restrictions.
¶ 10. On September 24, 1993, Dr. Wind-ham released Craddock to return to work the following week.
¶ 11. On September 27, 1993, Craddock arrived at Whirlpool ready to work. However, Craddock was advised by Roberts and Carroll Pringle that he was terminated due to Whirlpool’s policy that when a person’s absences are greater than his length of service, he is terminated. Crad-dock worked approximately a week and a half and had been off work for approximately five weeks.
¶ 12. On September 28, 1993, Craddock returned to Dr. Windham complaining of pain and stating that he was unable to work. At that time, Dr. Windham prescribed pain pills and muscle relaxants and diagnosed Craddock as having a thoraco-lumbar strain. Dr. Windham testified that Craddock had sustained no permanent impairment from his on-the-job injury and that Craddock had reached maximum medical improvement and could return to work on October 1,1993.
. ¶ 13. On a friend’s recommendation, Craddock saw Dr. George Ellis for his continued pain. Dr. Ellis referred Crad-dock to Dr. Don Carpenter, a neurologist, and Dr. Nate, a psychiatrist.
¶ 14. On October 10,1993, Dr. Carpenter referred Craddock to Dr. Bruce Senter, an orthopedist who limits his practice to diseases and traumas of the spine. Dr. Sen-ter performed a physical examination of Craddock on November 17, 1993, which revealed Craddock had no essential or neurological deficit. According to Dr. Sen-ter, Craddock had multiple non-organie signs or signs that are commonly associated with symptom magnification. Dr. Sen-ter treated Craddock conservatively with medications and home physical therapy.
¶ 15. When Dr. Senter saw Craddock on December 15, Craddock’s complaints were the same. Dr. Senter diagnosed Craddock as suffering from thoracic strain, which is a temporary problem. Work hardening or intensive physical therapy was ordered. Upon referral by Dr. Senter, The Rehab Group evaluated Craddock and placed him in a work-hardening program, which consisted of approximately five weeks of testing and procedures. A final functional capacity evaluation on January 25, 1994 indicated that Craddock was functioning in the light to medium exertion work level.
¶ 16. Dr. Senter did not place any permanent restrictions on Craddock nor did he feel based upon a reasonable degree of medical probability that Craddock had any permanent anatomical impairment due to the thoracic strain.
¶ 17. On April 7, 1994 Craddock was referred by his attorney to Dr. Tewfik E. Rizk, chief of staff at the Pain Clinic at St. Joseph Hospital in Memphis. Dr. Rizk testified that the electromyography and nerve conduction tests revealed the parav-ertebral muscle on the right side was abnormal. Dr. Rizk opined that Craddock’s pain was caused by an avulsion injury to *403 the posterior division of the nerve supplying T7, 8, 9, and 10. A thermogram revealed abnormality located in the same area on the paravertebral muscle on the right side. Dr. Rizk’s diagnosis was post-traumatic paravertebral muscle fibrosis on the right side at T7, 8, 9, and 10 directly related to Craddock’s work-related injury of August 20, 1993. Craddock was treated with pain medications and pain management techniques. Dr. Rizk testified Crad-dock reached maximum medical improvement on May 5, 1994, assigning a 10% impairment to the body as a whole due. Permanent work restrictions placed on Craddock by Dr. Rizk prohibited Crad-dock from lifting over 20 pounds, pushing, pulling or making any repetitive upper extremity movement.
¶ 18. After Dr. Rizk released Craddock to go back to work, Craddock returned to Whirlpool requesting that he be reemployed. Whirlpool refused to rehire Crad-dock.
¶ 19. Craddock’s attempts to find employment have been unsuccessful. At the time of the hearing, Craddock continued to take pain medication.
¶ 20. The administrative law judge and the full Mississippi Workers’ Compensation Commission found that Craddock sustained a compensable injury on August 20, 1993; that as a result of the work-related injury, Craddock was temporarily and totally disabled from August 20,1993 through May 5,1994, the date opined as the date of maximum medical improvement by Dr. Rizk; and that Craddock suffered no permanent medical impairment as a result of the injury. The Circuit Court of Lafayette County affirmed the Commission’s order finding it to be substantiated by both the facts and the law. Craddock perfected this appeal asserting that the circuit court erred in affirming the decision of the Workers’ Compensation Commission in that the Commission’s finding that Crad-dock suffered no degree of permanent impairment and no loss of wage-earning capacity was contrary to the overwhelming weight of the evidence and was not supported by substantial evidence.
ARGUMENT AND DISCUSSION OF THE LAW
¶ 21. Under our deferential standard of review, “[t]he findings and order of the Mississippi Workers’ Compensation Commission are binding on this Court so long as they are supported by substantial evidence.” Sibley v. Unifirst Bank, 699 So.2d 1214, 1217 (Miss.1997) (citations omitted). The Commission’s finding will be reversed on appeal only where such finding is clearly erroneous and contrary to the overwhelming weight of the evidence. Id. at 1218. Where, as here, two or more qualified medical experts reach different conclusions, we “will not determine where the preponderance of the evidence lies when the evidence is conflicting, the assumption being that the Commission, as the trier of fact, has previously determined which evidence is credible, has weight, and which is not.” Oswalt v. Abernathy & Clark, 625 So.2d 770, 772 (Miss.1993). Thus, we are bound by factual findings made by the Commission even if the evidence on the record would lead this Court to a different conclusion. Sibley, 699 So.2d at 1218.
¶22. In the case before us, Drs. Lamar, Windham and Senter testified Craddock suffered no permanent medical impairment, and Drs. Windham and Sen-ter testified Craddock was able to return to work without any permanent restrictions. However, Craddock was assigned a 10% permanent impairment to his body as a whole by Dr. Rizk. Dr. Rizk also placed permanent work restrictions on Craddock. In light of the conflicting medical testimony, we are bound by the Commission’s finding that Craddock suffered no permanent medical impairment.
¶ 23. Next, Craddock relies on Jordan v. Hercules, 600 So.2d 179 (Miss.1992), for his position that he must be awarded permanent benefits because a presumption *404 arose that Craddock suffered a permanent loss of wage-earning capacity when Whirlpool refused to rehire him. Craddock argues the Commission’s failure to invoke the evidentiary presumption of total loss of wage-earning capacity when Craddock was unable after diligent effort to find comparable employment at the same rate of pay after Whirlpool terminated him is reversible error. Whirlpool asserts Craddock was not terminated for his disability, but was terminated because he had been absent from work longer than he had actually worked, which was consistent with Whirlpool’s policy.
¶ 24. The presumption created by Whirlpool’s refusal to rehire Craddock is a re-buttable presumption, causing the burden to shift to Whirlpool to show that Crad-dock suffered no loss of wage-earning capacity. Id. at 183. The Commission’s finding that Craddock suffered no loss of wage-earning capacity was supported by credible evidence: Dr. Windham’s testimony that Craddock was able to return to work on October 1, 1993; The Rehab Group evaluation demonstrating Craddock was able to return to work without any restrictions; the testimony of Drs. Lamar, Windham, and Senter that Craddock had no permanent medical impairment; and Craddock’s testimony that he had worked laying carpet since his injury.
¶ 25. Applying the standard of review and considering the medical and lay testimony in its entirety, we find the Mississippi Workers’ Compensation Commission’s finding that Craddock suffered no permanent medical impairment or loss of wage-earning capacity due. to his August 20, 1993 on-the-job injury is supported by substantial evidence and is not clearly erroneous. Therefore, the order of the Lafayette County Circuit Court affirming the Mississippi Workers’ Compensation Commission decision is affirmed.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LAFAYETTE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.