# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-WC-00012-COA

SHAUN SEALS                                                                                              APPELLANT

v.

PEARL RIVER RESORT AND CASINO AND                                               APPELLEES
PEARL RIVER RESORT

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | BENJAMIN SETH THOMPSON JOSEPH R. FRANKS |
| ATTORNEY FOR APPELLEES: | AMY K. TAYLOR |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/10/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     Shaun Seals was injured while working in the course and scope of his employment. He brought his case before an administrative judge (AJ), who found that Seals had yet to reach maximum medical improvement (MMI). The employer appealed, and the case was reviewed by the Mississippi Workers' Compensation Commission (the Commission), which found that Seals had reached MMI and did not suffer a loss of wage-earning capacity. Aggrieved, Seals appeals the Commission's findings.

## FACTS

¶2.     Seals was working for the Pearl River Resort and Casino (Pearl River) when he was

injured in a car accident on April 14, 2012. The car he was in was rear-ended so violently the windows exploded. Following the collision, a number of doctors treated and evaluated Seals. Doctors Bruce Hirshman, Bruce Senter, and Howard Katz provided MMI dates ranging from August 20, 2012, to February 12, 2016.[1] Doctors Greg Wood and Orhan Ilercil did not find that Seals had reached MMI.[2]

¶3.    Dr. Michael Molleston suggested that Seals have surgery, but Doctors Senter, Ilercil, and Wood recommended against it. Dr. Ilercil stated that he did not "believe that a lumbar fusion would be in [Seals'] best interest . . . ." Dr. Wood vehemently opposed surgery, stating: "My gut feeling is that if he does undergo this surgery, he will not have a successful surgery and, more concerning, will be set on a path of multiple procedures and attempts to rectify his back pain."

¶4.    A vocational analysis was conducted by Bruce Brawner, who determined that Seals had lost access to thirty percent of the job titles in the competitive labor market commensurate with his skills and levels of expertise. Brawner reviewed Seals' earnings and reported that he had earned $76,462.00 in 2011 and $87,308.00 in 2012. Brawner opined that Seals is able to earn an average of $39,478.00 per year post-incident and that his loss of earnings is between thirty-nine and forty-eight percent.

---

[1] Dr. Senter provided two dates of MMI: August 20, 2012, and August 19, 2013. Dr. Hirschman also provided two dates of MMI: November 13, 2015, and February 12, 2016. Dr. Katz found Seals to be at MMI on August 20, 2012.

[2] While the Commission's decision stated that Dr. Wood found Seals to be at MMI, his report shows that he believed Seals could reach MMI following "an aggressive rehab course."

2

¶5. The case was brought before an AJ, who found that there was insufficient evidence to determine if Seals had reached MMI. The AJ then ordered Pearl River to pay temporary total disability benefits from the date of the injury until MMI could be determined.

¶6. Pearl River requested the Commission review the decision. The Commission reversed the AJ's order and, relying on Dr. Hirshman's report, found that Seals had reached MMI on November 13, 2015. Dr. Hirshman's notes from that date indicate that he placed Seals at MMI "from [his] practice of anesthesiology pain management." He released Seals to return to work on a full-time basis without restrictions or limitations.

¶7. The Commission further found that Seals did not prove any permanent disability or loss of wage-earning capacity as a result of his work-related injury.

¶8. Seals asserts four assignments of error on appeal: (1) the Commission erred in reversing the AJ's order; (2) he did not reach MMI on November 13, 2015; (3) the Commission improperly relied on conflicting expert opinions; and (4) the evidence does not support the Commission's findings.

## STANDARD OF REVIEW

¶9. In reviewing a decision of the Mississippi Workers' Compensation Commission great deference is given to the Commission's factual findings. *Janssen Pharm. Inc. v. Stuart*, 856 So. 2d 431, 435 (¶16) (Miss. Ct. App. 2003). This deferential standard of review leads to a reversal only when the Commission's finding of fact is unsupported by the evidence, arbitrary or capricious, or an error of the law. *Wayne Farms LLC v. Weems*, 105 So. 3d 1178, 1180 (¶6) (Miss. Ct. App. 2012). Where no evidence or only a scintilla of evidence supports

the Commission's decision, this Court will not hesitate to reverse. *Metal Trims Indus. Inc. v. Stovall,* 562 So. 2d 1293, 1297 (Miss. 1990); *F & F Const. v. Holloway*, 981 So. 2d 329, 331 (¶9) (Miss. Ct. App. 2008) (citing *Foamex Prods. Inc. v. Simmons*, 822 So. 2d 1050, 1053 (¶11) (Miss. Ct. App. 2002)).

¶10.    "A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act." *Hardaway Co. v. Bradley*, 887 So. 2d 793, 795 (¶11) (Miss. 2004).

## DISCUSSION

¶11.    To establish a compensable work-related injury, a claimant must show there was "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability." *City of Jackson v. Sandifer*, 125 So. 3d 681, 688 (¶27) (Miss. Ct. App. 2013). Once a claimant has established that they did receive a compensable, work-related injury, compensation is calculated after the claimant has reached MMI.

¶12.    Here, neither party disputes that Seals sustained a work-related injury. Instead, the issue we find to be dispositive in this case is whether there is substantial evidence to support the Commission's finding that Seals reached MMI on November 13, 2015, and if so, whether he suffered any loss of wage-earning capacity.

¶13.    "Maximum medical improvement is reached at such time as the patient reaches the maximum benefit from medical treatment or is as far restored as the permanent character of

4

his injuries will permit and/or the current limits of medical science will permit . . . ." Mississippi Workers' Compensation Medical Fee Schedule 8, § VI (2016) (defining MMI); *see also Alumax Extrusions Inc. v. Wright*, 737 So. 2d 416, 420 (¶10) (Miss. Ct. App. 1998). Only once the date of MMI has been established can it be determined whether an employee has suffered a loss of wage-earning capacity and, if so, to what extent.

## I. The Commission did not err in assigning the MMI date as November 13, 2015.

¶14. Seals challenges the Commission's finding that he reached MMI on November 13, 2015. Specifically, he argues that the Commission improperly relied upon conflicting expert opinions, and that the Commission's findings are not supported by substantial evidence.

¶15. "The Commission has the primary duty to analyze the evidence before it and to determine whether a claimant has reached maximum medical improvement or recovery." *Chestnut v. Dairy Fresh Corp.*, 966 So. 2d 868, 871 (¶6) (Miss. Ct. App. 2007).

### A. The credibility of conflicting expert opinions is for the Commission to determine.

¶16. Seals contends that the Commission improperly relied on Dr. Senter's opinion because it was contradicted by all of the other treating and evaluating physicians.

¶17. Where evidence supports as well as refutes an employee's claim, the matter is to be determined by the Commission. *Presto Mfg. Co. v. Teat*, 241 So. 2d 661, 662 (Miss. 1970). Further, where there is conflicting testimony, the Commission is the ultimate judge of the credibility of witnesses. *Id.* "[T]he Commission has the responsibility to apply its expertise and determine which evidence is more credible. We will uphold that determination unless

it is clearly erroneous." *Wesson v. Fred's Inc.*, 811 So. 2d 464, 469 (¶23) (Miss. Ct. App. 2002).

¶18. "[N]either this Court nor the Mississippi Supreme Court is empowered to determine where the preponderance of the evidence lies when the evidence is conflicting. Instead, this Court must affirm the decision of the Commission where substantial credible evidence supports the Commission's order." *Barber Seafood Inc. v. Smith*, 911 So. 2d 454, 461 (¶27) (Miss. 2005).

¶19. Evidence presented in the record showed conflicting medical opinions as to when, or if, Seals reached MMI. The Commission weighed the evidence and, in finding Dr. Hirshman's report to be credible, concluded that Seals reached MMI on November 13, 2015.

¶20. Given our deferential standard of review, we will not re-weigh the conflicting testimony.

**B.**     **Substantial evidence supported the Commission's finding that Seals reached MMI on November 13, 2015.**

¶21. In the alternative, Seals contends that the Commission's finding that he reached MMI on November 13, 2015, was not supported by substantial evidence. He argues the overwhelming weight of the evidence supported the AJ's order, which held that there was insufficient evidence to determine MMI.

¶22. Although it is generally the AJ who hears the live testimony, it is the Commission, not the AJ, who is the ultimate finder of fact and whose decision is entitled to appellate deference. *Barber Seafood*, 911 So. 2d at 461 (¶27).

6

¶23. As the ultimate fact-finder, the Commission "has the authority not to accept any or all fact findings of its 'facility,' the AJ." *Day-Brite Lighting Div., Emerson Elec. Co. v. Cummings*, 419 So. 2d 211, 213 (Miss. 1982). "[A]s long as the [C]ommission's decisions were based upon substantial evidence, that decision would be upheld upon appeal in spite of the fact that the [AJ's] decision was also supported by substantial evidence." *Id*.

¶24. The Commission found that Seals had been placed at MMI by Doctors Senter, Wood, Hirshman, and Katz. The Commission adopted the opinion of Dr. Hirshman, Seals' treating physician who found Seals to have reached MMI on November 13, 2015. Additionally, Dr. Katz, who reviewed all the doctors' records, found that MMI was achieved as early as August 20, 2012.

¶25. The Commission ruled that the substantial evidence supported the finding that Seals reached MMI on November 13, 2015. The Commission found that MMI was reached later than some of Seals' treating physicians had determined. We find that the Commission did not err in its determination that MMI was reached.

## II. Seals suffered a loss of wage-earning capacity.

¶26. Seals argues that the Commission erred in finding that he had not suffered a loss of wage-earning capacity. Compensation for a claimant with an injury not specifically scheduled by the workers' compensation statute is measured by a loss of wage-earning capacity. *Mueller Copper Tube Co. v. Upton*, 930 So. 2d 428, 436 (¶30) (Miss. Ct. App. 2005). An injury to the back is not specifically scheduled by the statute. *Id*.

¶27. When deciding whether a claimant has suffered a loss of wage-earning capacity, the

following factors are to be considered: the claimant's training, education, inability to work, failure to be hired elsewhere, continuance of pain, and other related circumstances. *Piney Woods Country Life Sch. v. Young*, 946 So. 2d 805, 808 (¶5) (Miss. Ct. App. 2006). All of these factors are to be considered as a whole. *Id*.

¶28. "If, because of the subject injury, the employee cannot secure employment at pre-injury pay, then the employee may be entitled to disability payments." *Ga. Pac. Corp. v. Taplin*, 586 So. 2d 823, 828 (Miss. 1991). Our Supreme Court held in *Pontotoc Wire Products v. Ferguson*, 384 So. 2d 601, 603 (Miss. 1980), that "[i]f a claimant makes a prima facie showing of reasonable efforts indicating there are not suitable jobs, the burden then shifts to the employer or insurer to show otherwise." This burden may be overcome "with evidence from such sources as employment agencies clearly showing the local accessibility of substantial gainful employment suited to [the claimant's] . . . medical condition." *Id*. at 604. A failure to present such evidence leads to the presumption that none was available, and "[i]t follows that the employer failed to rebut [the claimant's] prima facie case of disability." *Id*.

¶29. In *Ferguson*, a claimant suffered after inhaling noxious fumes in the plant where he worked. *Id*. at 602. The claimant was a thirty-nine-year-old man with a high school education and "work experience includ[ing] a stint as an assembly-line man for a tractor company in Illinois as well as a furniture inspector position . . . and sales work . . . ." *Id*. His treating physician placed no restrictions on the claimant "other than removing him from the industrial environment." *Id*. The Court considered the claimant's "trip to Jena, Louisiana,

8

seeking suitable employment, his application to Ram Golf, his effort to obtain a position as a state meat inspector, as well as his age, education, work experience, and extent of physical impairment" in concluding that he established a prima facie case of disability. *Id*. at 604. The Court ultimately held that because the employer failed to present evidence "showing the local accessibility of substantial gainful employment," the employer failed to rebut the claimant's prima facie case of disability. *Id*.

¶30.    Seals is a high school graduate who has completed approximately one and a half years of college courses. He previously worked as a firefighter, a laborer for an offshore drilling company, a security guard, and a lineman for an electronics company. In addition to these jobs, Seals also operated a number of businesses. He ran a carpet cleaning business, a private shuttle (limousine) company, and a car-detailing business. Seals' carpet cleaning business is currently active and operating, but he now needs multiple employees to assist in loading and unloading machinery from his van. Additionally, Seals–with help from his son–still maintains his car-detailing business.

¶31.    Seals testified that he was still "actively looking for work" and submitted a list of fourteen jobs that he applied to; none of the applications were dated after January 2014. Of these jobs, one was what he thought was a "similar position" in transportation at Pearl River, which had become available in January 2014, a year after he was let go. Seals also testified that, given his restrictions, he is only eligible for entry-level rather than managerial positions. There is no evidence that the Commission found Seals' search to be less than "reasonable." Additionally, just as in *Ferguson*, Pearl River failed to offer any evidence of substantial,

gainful employment suited to Seals' impairment.

¶32. The Commission solely relied on Dr. Senter's and Dr. Hirshman's findings to determine that Seals did not suffer a loss of wage-earning capacity. But all of the evaluators who opined on the issue—Brawner, Dr. Senter, and Dr. Katz—found that Seals suffered either a percentage of impairment, loss of wage-earning capacity, or both.

¶33. Following Dr. Senter's retirement, Dr. Molleston became Seals' treating physician, at which time he removed Seals from work. Additionally, Dr. Katz conducted an "Independent Medical Evaluation on Seals." After the evaluation Dr. Katz found that Seals was "capable of performing all light and sedentary activities . . . [as well as] some medium level activities." This was a significant decrease in Seals' pre-injury abilities that allowed him to perform tasks falling into the "very heavy classifications." In his report, Dr. Katz assigned Seals "a 2% impairment to the body as a whole . . . ."

¶34. We have addressed similar situations before. In *Stewart v. Singing River Hospital Systems*, the Commission relied on the opinion of a vocational rehabilitationist in determining a claimant's disability. *Stewart v. Singing River Hosp. Sys*., 928 So. 2d 176, 182 (¶25) (Miss. Ct. App. 2005). The rehabilitationist testified that the claimant could "possibly" perform some sedentary-level jobs. *Id*. at 180 (¶21). This assessment was based solely on a single interview with the claimant and an interpretation of the treating physician's deposition. *Id*. at 181 (¶23). However, this "possibility" was not included in the physician's deposition or medical notes. *Id*. at 179 (¶15). We ultimately concluded it was error "[f]or the Commission to rely on the overly optimistic interpretation by [the rehabilitationist] . . .

10

compared to that of a treating physician who steadfastly stated that [the claimant] was permanently disabled." *Id*. at 181 (¶23).

¶35.    Like *Stewart*, here the Commission erroneously relied on the opinions of Doctors Senter and Hirshman to determine that Seals did not suffer a loss of wage-earning capacity. However, medical doctors do not make findings about a claimant's wage-earning capacity. That is a legal determination, not a medical issue. *Walker Mfg. Co. v. Cantrell*, 577 So. 2d 1243, 1248 (Miss. 1991).  In the present case, the person qualified to make a determination as to Seals' loss of wage-earning capacity was Bruce Brawner, the rehabilitation consultant. Brawner's opinions were "based upon a specific methodology that included a vocational interview, vocational testing, transferable skills analysis, review of medical records and other documents, utilization of recognized publications, as well as labor market research."  He also used methodologies that are "nationally recognized, peer reviewed in the vocational rehabilitation literate, and are widely utilized within the profession of vocational rehabilitation."

¶36.    In reaching its conclusion the Commission gave no consideration to Brawner's report, which stated: "It is obvious that Mr. Seals' occupational choices have been diminished secondary to the April 14, 2012 incident."  Brawner calculated that Seals "has lost access to 30% of the job titles in the competitive labor market . . . that are consistent with [his] demonstrated specific vocational preparation level."  Using three different models, Brawner found Seals to have vocational impairment to his post-incident earning capacity ranging from thirty-five to thirty-nine percent.

¶37.    So Brawner's report remained unrebutted.  Evidence which is not affirmatively contradicted and not "inherently improbable, incredible, or unreasonable" cannot be arbitrarily and capriciously discarded.  *Morris v. Landsell's Frame Co*, 547 So. 2d 782, 785 (Miss. 1989).

¶38.    The Commission's finding that Seals did not suffer a loss of wage-earning capacity was erroneous. Pearl River failed to rebut Seals' presumption of disability by providing evidence of available employment; Brawner, Senter, and Katz found that Seals suffered either an impairment or a loss of wage-earning capacity, or both; and the one vocational rehabilitation report, produced by Brawner, remains uncontradicted.  We reverse and remand this case to calculate Seals' loss of wage-earning ability and award him compensation accordingly.

¶39.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**GREENLEE, TINDELL, McDONALD AND LAWRENCE, JJ., CONCUR. WESTBROOKS, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  J. WILSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON, P.J., AND C. WILSON, J.**

**J. WILSON, P.J., CONCURRING IN PART AND DISSENTING IN PART:**

¶40.    This Court has again reweighed the evidence, failed to apply the proper standard of review, and substituted its judgment for that of the Workers' Compensation Commission.[3]

---

[3] *See Sheffield v. S.J. Louis Constr. Inc.*, No. 2018-WC-00385-COA, 2019 WL 1349766, at *5-*9 (¶¶28-45) (Miss. Ct. App. Mar. 26, 2019) (J. Wilson, P.J., dissenting), *cert. granted*, No. 2018-CT-00385-SCT (Miss. Sept. 26, 2019); *Jones v. Miss. Baptist Health Sys. Inc.*, No. 2018-WC-00930-COA, 2019 WL 2605828, at *5-*9 (¶¶31-58) (Miss. Ct. App. June 25, 2019) (J. Wilson, P.J., dissenting), *pet. for cert. filed* Oct. 22, 2019.

I respectfully concur in part and dissent in part.[4]

## I.      Additional Relevant Facts

¶41.    Shaun Seals began working for Pearl River Resort and Casino in Philadelphia in 1999. He started out as a valet working for minimum wage but eventually worked his way up to director of transportation at the casino. In that position, he supervised all of Pearl River's valet and transportation staff and earned an annual salary of more than $80,000.

¶42.    In April 2012, Seals was injured at work when a van in which he was a passenger was rear-ended. Seals did not miss work after the wreck, but he went to see Dr. Bruce Senter, a back specialist. In August 2012, Dr. Senter released Seals to work "without restrictions." Dr. Senter also placed Seals at MMI with a 5% impairment rating to the body as a whole. At that time, Seals told Dr. Senter that he was "still having some mild low back pain" but that it was "not too much different than the pain he had prior to his injury."

¶43.    Seals continued treating with Dr. Senter. For reasons that are not clear from the record, Dr. Senter's records show that he again placed Seals at MMI with the same 5% impairment rating in August 2013. At that time, Dr. Senter again released Seals to work "without restrictions."

¶44.    After his injury, Seals continued working at Pearl River at the same salary. However, in January 2013, Pearl River eliminated Seals's position and several others as part of a restructuring plan implemented by new management. Since Seals's termination, Pearl River

___

[4] I concur with the majority's affirmance of the Commission's determination that Seals had reached MMI.

13

has not employed a director of transportation.[5]

¶45. Since he lost his job at Pearl River, Seals has continued to work. He has operated his own auto detailing business. Seals washes and details the cars himself. Seals also had his own limousine business with two limousines, although he testified that he stopped operating that business a year prior to the hearing before the administrative judge. Seals also continues to operate his own carpet cleaning business.

¶46. Dr. Senter apparently closed his practice sometime after he saw Seals in August 2013. From September 2014 to May 2015, Seals saw Dr. Michael Molleston. Dr. Molleston took Seals off work and recommended surgery to address Seals's continuing complaints of back pain. However, two other doctors evaluated Seals and recommended against surgery.[6] Dr. Molleston apparently stopped practicing sometime after he saw Seals in May 2015.

¶47. In July 2015, Seals began treating with Dr. Bruce Hirshman, a pain management specialist at the Methodist Pain & Spine Center. Dr. Hirshman ordered a course of physical therapy. In November 2015, Seals told Dr. Hirshman "that his back pain [was] 65% improved" and that he "continue[d] to note significant improvement." Dr. Hirshman's records further stated:

> [Seals] states that he is continuing to work on his own private business washing, detailing, and cleaning cars. He notes that after a long day of washing cars in the afternoon, he does begin to experience low back

---

[5] Seals testified that he applied for a "similar position" at Pearl River in January 2014; however, there is no evidence that such a position was actually available.

[6] The doctors were Dr. Greg Wood, who performed an employer's medical examination (EME), and Dr. Orhan Ilercil, who performed an independent medical examination (IME) pursuant to an order of an administrative judge.

discomfort. [Seals] experiences pain primarily in the right low back. In the mornings he rates his pain as a 3/10. In the afternoons he rates his pain as a 5-6/10.

Dr. Hirshman concluded as follows:

> At this time [Seals] is at MMI from my practice of anesthesiology pain management. He may return to work on a full[-]time basis without restrictions or limitations. I have informed the patient that with hard physical work such as cleaning cars, he may experience mild low back pain. There are no restrictions and limitations.

## II. The Commission's Decision

¶48. The Workers' Compensation Commission evaluated the medical evidence and other evidence in the record and found as follows:

> [Seals was] released to full duty employment with no restrictions by Dr. Senter on August 19, 2013. [Seals] later was released by Dr. Hirshman on November 13, 2015, with no restrictions and to full duty employment. We find the opinions of Dr. Senter and Dr. Hirshman to be more probative than that of Dr. Katz, who released [Seals] to all light and sedentary duty as well as some medium level work. Dr. Katz further opined that if twisting, bending, squatting, and stooping were continued then [Seals] would continue to exacerbate his condition. [Seals] treated for multiple visits with Dr. Senter and Dr. Hirshman, rather than a one time evaluation by Dr. Katz.[7] In this claim, we find that the opinions of Dr. Senter and Dr. Hirshman [are] more probative as to [Seals's] work-related injury and its affect on his employment capacity.

> Additionally, the Commission finds that [Seals's] termination with [Pearl River] was not due to injury, but rather economic factors unrelated to [Seals's] injury. . . . [Seals] currently is self-employed in various entrepreneurial endeavors. The Commission finds that the evidence as a whole supports a finding that [Seals] has suffered no loss of wage-earning capacity due to his compensable work-related injury as he has been released to full duty employment with no restrictions.

---

[7] Dr. Katz saw Seals once, in November 2016, at the request of Seals's attorney. Dr. Katz's report makes clear that he saw Seals "for an evaluation only" and that "[n]o treatment [would] be rendered and no doctor/patient relationship would be established."

. . . .

. . . . Further, we find that [Seals] has not established any permanent disability as a result of [his] work-related injury. . . .

### III.     Standard of Review

¶49.    Our standard of review in workers' compensation cases is narrow:

> "Our task is not to second guess the factual conclusions of the Commission . . . ." *Levy v. Miss. Uniforms*, 909 So. 2d 1260, 1265 (¶16) (Miss. Ct. App. 2005). "This Court's review is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated . . . constitutional or statutory rights. . . . [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before the Commission." *Pulliam v. Miss. State Hudspeth Reg'l Ctr.*, 147 So. 3d 864, 868 (¶16) (Miss. Ct. App. 2014) (citations and quotation marks omitted). "We defer to the Commission's decision and reverse only when the Commission's decision is not supported by substantial evidence." *Cook v. Home Depot*, 81 So. 3d 1126, 1128 (¶7) (Miss. Ct. App. 2011), *aff'd*, 81 So. 3d 1041 (Miss. 2012). "This remains true even though we might have reached a different conclusion were we the trier of fact." *Parker v. Ashley Furniture Indus.*, 164 So. 3d 1081, 1084 (¶11) (Miss. Ct. App. 2015) (quoting *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1164 (¶15) (Miss. Ct. App. 2010)).

*Sheffield*, 2019 WL 1349766, at *7 (¶36) (J. Wilson, P.J., dissenting).

### IV.     Analysis

¶50.    In order to prove a compensable disability in a body-as-a-whole case, "the burden is upon the claimant to prove (1) medical impairment, *and (2) that the medical impairment resulted in a loss of wage-earning capacity*." *Robinson v. Packard Elec. Div., Gen. Motors Corp.*, 523 So. 2d 329, 331 (Miss. 1988) (emphasis added) (citing Miss. Code Ann. §§ 71-3-3(i) & -17(c)(25) (Supp. 2019)).

¶51.    The Commission's finding that Seals did not suffer a loss of wage-earning capacity

is supported by substantial evidence. Two of Seals's treating physicians, who treated Seals for significant periods of time after his injury, both released Seals to work without restrictions. In addition, Seals continued to perform his job at Pearl River for more than nine months after his injury. Finally, even after his position at Pearl River was eliminated, Seals has continued to operate his own businesses, including long days of washing and detailing cars by himself. The Commission cited these facts and specifically found that the opinions of two of Seals's treating physicians, Dr. Senter and Dr. Hirshman, were more persuasive than the opinion of Dr. Katz, who assessed work restrictions based on a one-time evaluation. Such conflicts in the evidence are resolved by the Commission, not this Court. *Hale v. Ruleville Health Care Ctr.*, 687 So. 2d 1221, 1224-25 (Miss. 1997). On the record in this case, there was ample evidence to support the Commission's finding that Seals suffered no loss of wage-earning capacity.[8]

¶52.    The majority asserts that the Commission erred because it "solely relied on Dr. Senter's and Dr. Hirshman's findings." *Ante* at ¶32. But this is no basis for reversal. To begin with, the majority's assertion is incorrect. As set out above, the Commission also relied on Seals's return to his job at Pearl River for nine months post-injury and his

---

[8] *See, e.g.*, *Hayes v. Howard Indus. Inc.*, No. 2018-WC-01160-COA, 2019 WL 3561873, at *6 (¶28) (Miss. Ct. App. Aug. 6, 2019) (holding that claimant's return to work and lack of restrictions supported Commission's finding of no loss of wage-earning capacity) *Hanson v. Dolgencorp Inc.*, 150 So. 3d 146, 149 (¶11) (Miss. Ct. App. 2014) (holding that claimant's return to work and lack of any permanent restrictions supported Commission's finding of no loss of wage-earning capacity); *Craddock v. Whirlpool Corp.*, 736 So. 2d 400, 404 (¶24) (Miss. Ct. App. 1999) (holding that claimant's return to work, his return to work without restrictions, and his subsequent work laying carpet all supported Commission's finding of no loss of wage-earning capacity).

subsequent work detailing cars and in other businesses.  More important, the Commission did not commit any clear error by relying on the findings of not one but *two* of the claimant's treating physicians.  The Commission simply concluded that the findings of Dr. Senter, who treated Seals at the time of his injury and for sixteen months thereafter, and Dr. Hirshman, who treated Seals for at least seven months in 2015-2016, were more persuasive than the opinion of Dr. Katz, who examined Seals once at the request of Seals's attorney.  It is the role of the Commission, not this Court, to weigh such conflicting medical evidence.  The majority, for whatever reason, apparently prefers Dr. Katz's opinion to the findings of Dr. Senter and Dr. Hirshman.  However, the majority's unexplained preference for Dr. Katz is not a valid reason to reverse the Commission's decision.  No legal rule required the Commission to accept Dr. Katz's opinion over the findings of two treating physicians.

¶53.    What really seems to bother the majority is that the Commission did not credit the report of Bruce Brawner, a non-testifying vocational expert.  But the majority ignores that Brawner is not a doctor.  A vocational expert does not assess a claimant's physical limitations.  A doctor must first assess the claimant's physical limitations, and a vocational expert such as Brawner may then assess the claimant's loss of access to the job market or loss of wage-earning capacity *based on restrictions as assessed by the doctors*.  In this case, Brawner relied on the restrictions *assessed by Dr. Katz*.  However, the Commission found that Dr. Katz's opinion was unpersuasive.  That finding eliminated the foundation of the Brawner report.  The relevant evidentiary conflict in this case was between the findings of Dr. Senter and Dr. Hirshman, on one hand, and the opinion of Dr. Katz, on the other hand.

18

The Commission was entitled to weigh that conflicting medical evidence and reach the conclusion that it did—which rendered Brawner's report irrelevant.[9]

¶54.    The majority also relies on the fact that Dr. Katz and Dr. Senter both assigned Seals a permanent impairment rating to the body as a whole—Dr. Katz assigned a 2% impairment, whereas Dr. Senter assigned a 5% impairment.  However, as noted above, the claimant in a body-as-a-whole case bears the burden of proving not only a medical impairment *but also a resultant loss-of-wage-earning capacity. Robinson*, 523 So. 2d at 331.  An impairment rating alone is not enough.  Thus, it is well settled that "a claimant who has suffered a functional/medical disability of 15% may have no industrial disability (i.e., loss of wage-earning capacity) at all if the functional impairment does not impede the claimant's ability to perform the duties of employment." *Weathersby v. Miss. Baptist Health Sys. Inc.*, 195 So. 3d 877, 884-85 (¶30) (Miss. Ct. App. 2016) (quoting *Robinson*, 523 So. 2d at 331) (brackets omitted).[10]  An impairment rating is one piece of evidence for the Commission to consider, but it does not establish a loss of wage-earning capacity absent proof that the impairment restricts the claimant's ability to earn a living.

¶55.    The majority also argues that Seals is entitled to a "presumption of disability" based

---

[9] The majority calls Brawner's report "unrebutted" and "uncontradicted." *Ante* at ¶¶37-38.  This, again, misses the point.  The report is based entirely on an assumption—that Dr. Katz correctly assessed Seals's work restrictions—that *is* contradicted.

[10] In *Weathersby*, we affirmed the Commission's finding that the claimant suffered no loss of wage-earning capacity despite the opinions of physicians assigning her a 9% and 15% impairment to the body as a whole. *Weathersby*, 195 So. 3d at 884-85 (¶30); *see also, e.g.*, *Hanson*, 150 So. 3d at 149 (¶11) (affirming Commission's finding of no loss of wage-earning capacity despite assignment of a 2% body-as-a-whole impairment rating).

19

on his post-injury job search. The majority relies on *Pontotoc Wire Products Company v. Ferguson*, 384 So. 2d 601, 603 (Miss. 1980), which holds that "[i]f a claimant makes a prima facie showing of reasonable efforts indicating there are not suitable jobs, the burden then shifts to the employer or insurer to show otherwise." However, this is an argument of the majority's own making. Seals has not suggested that he is entitled to a presumption of disability. Indeed, Seals has not made any argument based on his job search. Thus, the majority's argument is inconsistent with the rule that "we will not act as an advocate for one party to an appeal." *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018) (quoting *Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App. 2014)).

¶56. In any event, the majority's new argument is also without merit because Seals failed to show that he had engaged in any reasonable job search. At his hearing in November 2017, Seals offered a job search form indicating that he posted his resume to LinkedIn in January 2013 and submitted about a dozen online job applications in late 2013 and January 2014. Most of the applications were submitted during a few days in January 2014. There is no evidence that Seals did anything else to look for work. Although he claimed that he was "actively looking for work," he described his efforts as "[l]ooking on LinkedIn" and at "[w]hatever pops in [his] email." There is no evidence that Seals applied for or inquired about any job in-person. For example, Seals never applied for work with Yates Construction, a large employer in Philadelphia, even though he had worked for Yates in high school and knows its owner personally. Seals stated that he had not "been able to reach out to [Mr. Yates]" in the nearly five years since he lost his job at Pearl River. Moreover, Seals testified

20

that he limited his search to jobs within his own self-assessed work restrictions. In light of the Commission's finding that Seals does not have any such restrictions, this was not a reasonable job search. Given the limited nature of Seals's job search, it is not surprising that Seals has not made any argument based on his job search. Furthermore, the argument that the majority has made for Seals is not supported by the record.[11]

¶57. The majority also relies on *Stewart v. Singing River Hospital System*, 928 So. 2d 178 (Miss. Ct. App. 2005), but our opinion in *Stewart* actually supports the Commission's decision here. In *Stewart*, the claimant (Stewart) argued that the Commission improperly relied on the opinion of the employer's vocational rehabilitation expert that Stewart could work at a sedentary level. *Id.* at 180 (¶20). We agreed that the Commission clearly erred by relying on the expert's opinion because it (a) was "based on a single interview with Stewart" and (b) was directly contradicted by Stewart's "treating physician who steadfastly stated that Stewart was permanently disabled." *Id.* at 181 (¶23). In this case, we have almost the exact opposite situation. The Commission properly relied on the conclusions of *two treating*

---

[11] The majority's reliance on *Ferguson*, *supra*, is also misplaced because that case's facts could not be more different. In *Ferguson*, a factory worker was "remov[ed] . . . from the industrial environment" and limited to "light and sedentary tasks requiring little exertion." *Ferguson*, 384 So. 2d at 602. His workplace exposure to "noxious fumes" had left him with "the lung capacity of an 80-year-old man, preventing heavy manual labor with or without exposure to fumes, but permitting office work without exposure to fumes." *Id.* The Supreme Court noted that he had driven from his home in north Mississippi to Jena, Louisiana, to apply for one job, he talked to legislators about a job with the State, and he applied for other jobs. *Id.* at 603-04. Despite this, he was unable to find a job. *Id.* In contrast to the claimant in *Ferguson*, Seals (1) was released to work without restrictions by two different treating physicians; (2) made only a cursory online job search almost four years prior to his hearing; (3) limited his search to positions within his own self-assessed work restrictions; and (4) has remained self-employed in various businesses since he lost his job at Pearl River.

*physicians* who found that Seals had no work restrictions. And the Commission discounted the opinion of Dr. Katz, who evaluated Seals only once—four-plus years after the injury, for purposes of litigation. The Commission's reasoning and findings in this case are fully consistent with this Court's opinion in *Stewart*.

¶58. Shaun Seals clearly worked hard to earn a promotion to a good, well-paying job at Pearl River. It is equally clear that Seals suffered financially when Pearl River decided to eliminate his position, which is unfortunate. It is also undisputed that Seals suffered an on-the-job injury in a car wreck, which is also unfortunate. However, there is no clear or overwhelming evidence that Seals's injury has prevented him from doing his job at Pearl River or has prevented him from obtaining any other job. On the conflicting evidence presented, the Commission found as fact that Seals's injury had not resulted in any loss of wage-earning capacity. The Commission's finding is supported by the conclusions of two of Seals's treating physicians and other evidence. Therefore, the Commission's decision must be affirmed. I respectfully dissent in relevant part.

**BARNES, C.J., CARLTON, P.J., AND C. WILSON, J., JOIN THIS OPINION.**